Argued and submitted September 16, affirmed November 13, 2003

Leroy C. HAMMER
and Christine L. Hammer,
*Petitioners,*

*v.*

CLACKAMAS COUNTY,
*Respondent.*

2002-165; A122139

79 P3d 394

David J. Hunnicutt argued the cause and filed the brief for petitioners.

Michael E. Judd argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

### ARMSTRONG, J.

Petitioners, Leroy C. Hammer and Christine L. Hammer, seek review of a Land Use Board of Appeals (LUBA) decision dismissing their appeal of respondent Clackamas County's recording of a major partition plat. We affirm.

The basic facts are undisputed, and we take them from LUBA's opinion. The subject property is approximately 15 acres and is developed with a single-family dwelling. In November 2001, the North Clackamas County Park and Recreation District applied to partition the property into two parcels for the purpose of acquiring the northern five acres for future park and recreation land development. On March 6, 2002, the county hearings officer approved a conditional zone change for the property; the condition required the park district to acquire the northern five acres of the parcel. The approval also required that public access to SE 139th Avenue be secured before development permits could issue.

On March 19, 2002, the county approved the proposed preliminary plat for the partition.[1] Petitioners were sent notice of application for the preliminary plat approval on March 1, 2002. No appeal followed the zone change or the preliminary plat approval.

The park district caused a survey of the property to be made. The survey indicated that portions of the property had been identified in prior surveys as belonging to the owners of adjoining properties, including a 4,000-square-foot strip of land that prior surveys had shown belonged to petitioners. Quitclaim deeds were provided to the adjoining property owners, including petitioners, in order to cure the discrepancies. Petitioners objected to the accuracy of the park district survey and refused to execute the quitclaim deed.

Negotiations between petitioners' attorney, the county surveyor, and the district did not resolve the matter. The county surveyor notified petitioners' attorney by letter

---

[1] Subdivisions and partitions are governed by ORS chapter 92 and local ordinances. ORS 92.040 addresses applications for a preliminary plat approval.

on October 29, 2002, that he had decided to approve the partition plat. He stated that it was his opinion that the park district survey correctly represented the position of the deed lines of the subject property, as well as those of the adjoining properties. Under ORS 92.100(1), before any partition plat may be recorded, it must be approved by the county surveyor. The surveyor

> "shall check the partition plat and make such computations and other determinations that the partition plat complies with the provisions of this and other applicable laws and with the partition requirements established pursuant to an ordinance or resolution by the governing body of the controlling city or county."

ORS 92.100(3).

Petitioners' attorney wrote to county counsel, again asserting that the survey was in error. On November 8, 2002, the surveyor signed the partition plat, and on November 15, 2002, county counsel sent a letter to petitioners' attorney that advised her that the surveyor had signed the plat. The plat was recorded with the county clerk on November 21, 2002. Petitioners filed a notice on December 12, 2002, of their intent to appeal the surveyor's approval of the final plat. Petitioners' notice of intent to appeal before LUBA complained that

> "[t]he final recorded plat unreasonably differs from the proposal described in the notice of partition and the notice of decision, in that a part of Petitioners' land is included within the plat without their declaration or consent."

The county moved to dismiss the appeal, arguing that petitioners' notice of intent to appeal challenged only the recording of the plat. According to the county's argument, recording of a plat is governed by ORS chapter 205 and is not a land use decision or limited land use decision within the meaning of ORS 197.015(10) or (12), respectively.[2] The county alternatively argued that, assuming that the county surveyor's decision to approve the final partition plat was a land use decision or limited land use decision, petitioners' notice of intent

---

[2] As applicable here, ORS 197.015(10)(a)(A)(i)-(iv) defines "land use decision" to include a final decision or determination of a local government or special district that concerns adoption, amendment, or application of the goals, a comprehensive plan provision, a land use regulation, or a new land use regulation. ORS

to appeal was filed more than 21 days after the surveyor's decision. As such, the notice was too late.[3] The county claimed that on October 29, 2002, petitioners were on notice that the surveyor would approve the plat, and county counsel informed petitioners on November 12, 2002, of the surveyor's November 7, 2002, plat approval.

LUBA agreed that the act of recording the plat was not a limited land use decision within the meaning of the statutory definition. It nonetheless treated the final plat approval as falling within the definition, and it agreed with the county that the approval became final, "at the latest," when the county planner and county surveyor signed the final plat on November 8, 2002.[4] LUBA concluded that the deadline to appeal the decision expired on December 3, 2002, which was 21 days after the date that the county counsel sent the letter to petitioners' attorney advising him of the date that the county surveyor had signed the final plat. Because petitioners' notice of intent to appeal was filed on December 12, 2002, the appeal was not timely. LUBA added that petitioners' notice of intent to appeal could be timely only

> "if the county clerk's recording of the final plat on November 21, 2002 either (1) is the county's final decision to approve the final plat; or (2) is the date that some earlier county decision to approve the final plat became final for purposes of appeal."

LUBA specifically rejected petitioners' argument that the clerk's decision to accept the final plat for recording should be regarded as the date that the plat approval became final for

---

197.015(12)(a) defines a "limited land use decision" as "a final decision or determination made by a local government pertaining to a site within an urban growth boundary that concerns * * * [t]he approval or denial of a subdivision or partition as described in ORS chapter 92."

[3] The county did not specify the statute that controlled the time limit for filing a notice of intent to appeal with LUBA. As LUBA noted, ORS 197.830(5)(a) offers the most favorable time to file for petitioners. The statute requires filing within 21 days of the date petitioners received "actual notice" of the county's decision (in this case, the surveyor's plat approval).

[4] LUBA did not expressly state that the surveyor's and county planner's signatures on the plat constituted the final partitioning plat approval, but its discussion treats the signatures as having that effect. ORS 92.100(1) requires a partition plat to be approved by the county surveyor. The statute requires additional signatures in the case of approval of a subdivision plat. The parties do not cite other partition approval requirements specific to Clackamas County.

purposes of appeal to LUBA. The board characterized the filing of the final plat in the clerk's office as a ministerial act that had nothing to do with county land use regulations or whether the final plat conformed to the preliminary approval. The board then referred to its administrative rule defining finality of a land use decision:

> "A decision becomes final when it is reduced to writing and bears the necessary signatures of the decision maker(s), unless a local rule or ordinance specifies that the decision becomes final at a later date, in which case the decision is considered final as provided in the local rule or ordinance."

OAR 661-010-0010(3).[5] LUBA treated the county surveyor's November 8, 2002, signing of the final plat as the act that fulfilled "the rule's requirement for a writing and signature, and petitioners do not argue otherwise."

On review, petitioners appear to agree that the county surveyor's signature approval of the final partition plat was a limited land use decision as defined in ORS 197.015(12), but petitioners claim that they were entitled to notice of the proposed final approval under ORS 197.195. That statute sets out particular requirements for limited land use decisions. Specifically, ORS 197.195(3)(b) requires that notice of the pendency of a limited land use decision be provided to property owners within 100 feet of the site. The notice must also, among other things:

> "(A) Provide a 14-day period for submission of written comments prior to the decision;
>
> "(B) State that issues which may provide the basis for an appeal to the Land Use Board of Appeals shall be raised in writing prior to the expiration of the comment period. Issues shall be raised with sufficient specificity to enable the decision maker to respond to the issue;
>
> "(C) List, by commonly used citation, the applicable criteria for the decision[.]"

ORS 197.195(3)(c). Under ORS 197.195(3)(c)(H), notice of the decision must be provided to the applicant and to those who

---

[5] LUBA erroneously cited the rule as OAR 660-010-0013(3). OAR chapter 660 includes rules of the Land Conservation and Development Commission. LUBA's rules are found in OAR chapter 661.

submit comments. ORS 197.195(4) requires that approval or denial of a limited land use decision

> "shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

We understand petitioners to assert that they were entitled (1) to notice of the pendency of the decision that complies with ORS 197.195(3)(b) and (c) and (2) to notice of the final decision. If so entitled, then the time to file the notice of intent to appeal with LUBA did not begin until petitioners had actual notice of the final plat approval. *See* ORS 197.830(5)(a); ORS 197.195(3)(c)(H); ORS 197.195(4). Alternatively, petitioners assert that, if they were not entitled to notice of the county's limited land use decision, then the 21-day deadline began to run on the date petitioners knew or should have known of the decision. *See* ORS 197.830(5)(b).[6]

The county responds with both a reprise of its argument that the approval of the final plat is not a limited land use decision and with an assertion that petitioners failed to preserve their defective notice argument under ORS 197.195. For the reasons explained below, we reject the county's assertion that a final plat approval does not fall within LUBA's review authority as a limited land use decision. First, we address the county's preservation argument and LUBA's dismissal of petitioners' notice of intent to appeal.

The county admits that the notice requirements of ORS 197.195 were not met "nor was there any effort made to comply with them, because at that time the County had no idea that County Surveyor approval of the final plat would be

---

[6] ORS 197.830(5) provides:

"If a local government makes a limited land use decision which is different from the proposal described in the notice to such a degree that the notice of the proposed action did not reasonably describe the local government's final actions, a person adversely affected by the decision may appeal the decision to the board under this section:

"(a) Within 21 days of actual notice where notice is required; or

"(b) Within 21 days of the date a person knew or should have known of the decision where no notice is required."

considered a limited land use decision." Nonetheless, while the county does not concede that the surveyor's approval constitutes a limited land use decision, the county appears to agree with LUBA to the extent that LUBA treated the November 12, 2002, letter as actual notice of the decision under ORS 197.830(5)(a). Of course, that argument does not answer the question of the adequacy of the notice under ORS 197.195.

■■ The county contends that petitioners did not discuss ORS 197.195 before LUBA or argue its applicability to the county's action on the final plat. We agree. The record before LUBA includes no argument about ORS 197.195, and we note LUBA's opinion does not mention the statute. As a result, we do not reach the question of whether the written communications to petitioners' counsel satisfied the notice requirements of ORS 197.195(3) and (4) or what effect defective notice of either the pendency of a decision or the final decision itself might have on the time limits to seek LUBA review as set out in ORS 197.830(5). We are left with the county's characterization of the controversy as one that assumes that it was the county surveyor's approval that was being challenged. The only question, then, is the date that the decision was reduced to writing (under LUBA's rule) and the date of notice to petitioners of that signing. In that regard, we agree with LUBA's conclusion that petitioners failed to file their notice of intent to appeal within 21 days of the date that they received actual notice that the surveyor had signed the final plat.

■ Finally, we turn to the county's claim that LUBA lacks review authority over the surveyor's decision and the final partition plat approval because the approval is not a limited land use decision.

We understand the county to posit that, because the surveyor's signature on the final plat involves only review for technical plat and survey requirements and not land use regulations, a final plat approval is not a land use decision or limited land use decision as defined in ORS 197.015(10) and (12).[7] As such, the county argues, the final plat approval is

_____

[7] See ORS 92.100(2) and (3) regarding plat approvals and ORS 209.250 addressing surveys.

not subject to LUBA's review under ORS 197.825. The county agrees that ORS 197.015(12)(a) includes within the definition of limited land use decision "approval or denial of a subdivision or partition, as described in ORS chapter 92," but argues that it is the tentative plan approval stage of the process that authorizes the partition or subdivision if it meets the relevant land use planning requirements. In the county's view, the application of land use standards applies to the preliminary plat phase of the approval, not to the final plat phase of it.[8] Under that view, LUBA's authority would be limited to review of preliminary plat approvals.

■■    Our inquiry is guided by the tenets of statutory construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We first look to the text of the statutes in question and the statutory context within which they appear. *Id.* The statute defining limited land use decision makes no distinction between a preliminary plat approval and a final plat approval. The statute includes "subdivision or partition" within the definition of a limited land use decision without mention of the two-stage approval process set out in ORS 92.010 to 92.180. Nothing in the remainder of ORS chapter 197 offers us any reason to read "preliminary plat approval" into the definition of limited land use decision.[9] Further, we note that the statute controlling the surveyor's role in the approval of a final partition or subdivision plat does not confine the surveyor's duties to purely technical matters of interest only to a surveyor. ORS 92.100(3) calls upon the surveyor to

> "check the partition plat and make such computations and other determinations that the partition plat complies with the provisions of this and other applicable laws and with the partition requirements established pursuant to an ordinance or resolution by the governing body of the controlling city or county."[10]

---

[8] The county's argument is applicable equally to partitions and subdivisions requiring preliminary and final plat approval.

[9] LUBA discussed ORS 197.015 in *Bauer v. City of Portland,* 38 Or LUBA 715, 719 (2000), and concluded that its "authority to review limited land use decisions includes review of subdivision approvals, whether at the preliminary or the final plat stage." LUBA's opinion in this case is consistent with that prior conclusion.

[10] ORS 92.100(2) sets out similar duties with respect to review of a subdivision plat.

Also, ORS 92.100(5) recognizes that a city, county, or special district may require the surveyor to perform an "engineering review and approval of a subdivision plat to assure compliance with state and local subdivision requirements that relate to matters other than survey adequacy." The surveyor's duty to approve partition and subdivision plats, then, is not confined to check-offs of survey requirements but involves other matters as set out in state and local subdivision and partition ordinances. Subdivision and partition ordinances are land use regulations under ORS 197.015(11), and applications of such regulations are land use decisions under ORS 197.015(10)(a)(A)(iii). Given that context, it appears unlikely that the legislature intended approval of a partition plat (or a subdivision plat) to be regarded as an act entirely outside the provisions of ORS chapter 197's broad definition of land use decision or limited land use decision. Agreement with the county's position would require us to ignore the text and the context of the statutory definition of limited land use decision and add restrictive words to the definition of limited land use decision in ORS 197.015(12). That we are not permitted to do. Rather, our office is "to ascertain and declare what is, in terms or in substance, contained [within the statute], not to insert what has been omitted, or to omit what has been inserted." ORS 174.010; *see, e.g., PGE,* 317 Or at 610-12. In any event, we are directed to no persuasive authority to suggest the legislature did not mean what it said when defining a limited land use decision as one of "approval or denial of a subdivision or partition, as described in ORS chapter 92." We therefore decline to adopt the county's gloss on ORS 197.015(12) or the companion claim that LUBA lacks jurisdiction to review final plat approvals.

Affirmed.