Argued and submitted November 25, 2008, reversed and remanded May 13, petition for review denied July 29, 2009 (346 Or 590)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## KEITH R. PAPINEAU,
*Defendant-Respondent.*

Union County Circuit Court
M13975; A135823

208 P3d 500

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Wes Williams argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

This case requires us to interpret a rule promulgated by the Department of Oregon State Police (OSP) regarding the procedure for administering breath tests to determine blood alcohol content. Defendant argued at trial that the rule required two breath samples in order to yield an admissible result and, because police took only one, the result should be suppressed. The state argued that, under the rules properly understood, one sample sufficed. The trial court agreed with defendant. The state appeals. We reverse.

■ Defendant was arrested for driving under the influence of intoxicants and taken to the police station to perform a breath test. In administering that test, the police used an instrument called an Intoxilyzer 5000. The officer instructed defendant to blow into the instrument one time. The result showed a blood alcohol content of .17 percent, well above the legal limit of .08 percent. At trial, defendant filed a motion to suppress that result on the ground that it was not an admissible chemical analysis because, under OAR 257-030-0105 (a temporary rule at the time of trial subsequently made permanent), a breath test requires two samples. That rule provides, in part:

> "(1) As used in these rules, 'Chemical Test' and 'Chemical Analysis' of a person's breath both mean the quantitative analysis for alcohol by means of direct or indirect measurement of physicochemical technique. *Two valid breath samples*, provided within a single testing sequence and culminating in a printed report with a completed test result shall constitute a 'Chemical Test' of a person's breath.

> "(2) A 'valid breath sample' means a sample of a person's breath provided in such a manner to be acceptable for analysis by the instrument."

(Emphasis added.) The state argued that the two-sample rule applies to tests only if they are taken with the newer version of the testing instrument, the Intoxilyzer 8000. The trial court agreed with defendant and granted his motion to suppress the test results. The state takes this interlocutory appeal pursuant to ORS 138.060(1)(c).

■ Our objective in interpreting an administrative rule is to determine the intent of the body that promulgated it; to do so, we begin with an examination of the text in context, which includes "other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes. * * * If the enacting body's intent is clear after that inquiry, the court does not proceed further." *Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997).

We begin with the statutory and regulatory background. Under ORS 813.300(2), "[n]ot less than 0.08 percent by weight of alcohol [by chemical analysis] in a person's blood constitutes being under the influence of intoxicating liquor." In turn, ORS 813.160 provides that a person's *blood* alcohol content can be determined by a *breath* analysis:

"(1) A chemical analysis is valid under ORS 813.300 if:

"* * * * *

"(b) It is an analysis of a person's breath and is performed * * * according to methods approved by the Department of State Police. For purposes of this paragraph, the Department of State Police shall do all of the following:

"(A) Approve methods of performing chemical analyses of a person's breath."

The state, pursuant to that mandate, promulgated rules specifying the procedures to be used in performing chemical breath analyses, including the two-sample rule.

The state's argument begins with some additional background information. The two-sample rule was adopted on June 30, 2006, as a temporary rule, approximately three weeks before defendant was arrested and tested. At that time, three different Intoxilyzer models were, or recently had been, in use: the Intoxilyzer 1400, the Intoxilyzer 5000, and the Intoxilyzer 8000. The new temporary rule suspended the existing rule that set out the procedures for using the Intoxilyzer 1400, which was apparently completely phased out; made insignificant amendments to the existing rules that set out procedures for using the Intoxilyzer 5000, which was in the process of being phased out but was still in use in some places; and enacted new rules that set out procedures

for using the Intoxilyzer 8000. The Intoxilyzer 5000 rules were numbered OAR 257-030-0060 and OAR 257-030-0070. The Intoxilyzer 1400 rule was OAR 257-030-0075. The new Intoxilyzer 8000 rules were added at the end of the Intoxilyzer 5000 and 1400 rules and were numbered OAR 257-030-0105 to 257-030-0140.

The two-sample rule, OAR 257-030-0105, occurs, then, as the first rule in a new sequence of rules dealing with the Intoxilyzer 8000, after the old (but not repealed) rules dealing with the Intoxilyzer 5000 and the old (and suspended) rule dealing with the Intoxilyzer 1400. The two-sample rule, the state points out, begins with the phrase, "As used in *these rules,* * * *." (Emphasis added.) "[T]hese rules," the state argues, must refer only to the new rules, numbered in sequence after the two-sample rule, dealing with the Intoxilyzer 8000. "[T]hese rules" does not refer to the preceding, pre-existing rules that deal with the Intoxilyzer 5000 or 1400. Thus, the two-sample requirement applies only to Intoxilyzer 8000 testing. The state also points to (but does not rely on) an "ED. NOTE" in the 2007 Oregon Administrative Rules that explains:

> "OAR 257-030-0040 through 257-030-0100 apply to the Intoxilyzer 5000, which will be phased out and replaced. Upon completion of replacement of the Intoxilyzer 5000, OAR 257-030-0040 through 250-030-0100 will be repealed. OAR 257-030-0105 through OAR 257-030-0170 apply to the new instrument, the Intoxilyzer 8000, which are [*sic*] being phased into service in replacement of the Intoxilyzer 5000."

Defendant relies primarily on the plain text of the two-sample rule: "[t]wo valid breath samples" means what it says, and context is incapable of changing "two" into "one." Further, defendant points out, subsection (3) of the two-sample rule provides:

> "If any part or provision of OAR 257-030-0105 to 257-030-0170 or the application thereof is held invalid, the remaining part(s) or provision(s) shall remain in full force and effect."

OAR 257-030-0105(3). That language, defendant argues, demonstrates that, when those who promulgated the rule wanted to limit its applicability to provisions that expressly

applied only to the Intoxilyzer 8000, they knew how to do so, and no such limitation appears with respect to the need to take two samples. Further, it is logical, according to defendant, for OSP to change the status quo regarding the Intoxilyzer 5000—that is, one sample—because the aging machines were more likely to experience malfunctions. Finally, defendant argues that the "ED. NOTE" was not part of the temporary rule in effect when he was arrested, appeared more or less mysteriously sometime thereafter, has no identified author, and, in any event, never underwent the statutory rulemaking procedures that are a prerequisite to acquiring the force of law.

Defendant is correct with respect to the "ED. NOTE." If a rule needs clarification, the proper procedure is to promulgate a new version of the rule that accomplishes that objective, not to interject a *post-hoc* "note." His other arguments, however, are less persuasive. The issue here is not whether "two" can, in some contexts, mean "one." Rather, it is the import of the phrase "these rules" in OAR 257-030-0105. In that respect, OSP has the better arguments. The rules that OSP added in 2006, as a group, deal with the advent of the Intoxilyzer 8000 and how to use it. The new rules, including the two-sample rule, do not alter the existing rule containing instructions for taking samples with the Intoxilyzer 5000.[1] Those instructions are precise and detailed, and they require only one sample. Indeed, it is doubtful that the instructions even allow a second sample. The intent of those who promulgated the rule is clear: As long as both the Intoxilyzer 5000 and the Intoxilyzer 8000 are in use, the operation of each is guided by an elaborate set of procedures. OAR 257-030-0070 applies to the Intoxilyzer 5000. OAR 257-030-0105 to 257-030-0130, the last of which is

---

[1] The only change that the new rules make to OAR 257-030-0070, the Intoxilyzer 5000 rule, is to add the following:

"Nothing in this subsection precludes an operator from terminating the breath testing sequence as 'Refused' if the subject refuses, through a willful act, to follow the instructions of the operator. A printed test record card, as described in section (5)(d), is not required to document the operator's decision to terminate the breath test sequence as 'Refused.'"

OAR 257-030-0070(6)(b).

captioned, "Approved Methods for Operating the Intoxilyzer 8000," govern the use of that instrument.

Reversed and remanded.