Argued and submitted August 3, reversed and remanded November 18, 2009

# WILLAMETTE OAKS, LLC,
## *Petitioner,*

*v.*

# CITY OF EUGENE
## and Goodpasture Partners, LLC,
### *Respondents.*

## Land Use Board of Appeals
## 2008173; A142351

220 P3d 445

Zack P. Mittge argued the cause for petitioner. With him on the brief were William H. Sherlock and Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Seth J. King argued the cause for respondent Goodpasture Partners, LLC. With him on the brief were Michael C. Robinson, Roger A. Alfred, and Perkins Coie LLP.

Emily N. Jerome waived appearance for respondent City of Eugene.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Wollheim, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Petitioner, Willamette Oaks, LLC, seeks review of the Land Use Board of Appeals (LUBA) decision affirming the City of Eugene's (city) approval of a zone change for certain land from medium-density residential to limited high-density residential, contending that LUBA's order is unlawful in substance. We review pursuant to ORS 197.850 and, on review, hold that LUBA improperly concluded that the city could lawfully defer consideration, pursuant to OAR 660-012-0060, of whether the zone change would significantly affect a transportation facility. Accordingly, we reverse and remand.

The relevant facts of this case are undisputed. The property at issue is approximately 23 acres in size and is located on a dead-end street. The property is designated on the city's comprehensive plan map as high-density residential. However, before the zone change at issue, it was designated on the city's zoning map as medium-density residential with planned unit development (PUD) and water resources conservation overlays. Goodpasture Partners, LLC (Goodpasture), is the current owner of the property, and Goodpasture's predecessor-in-interest applied to have the zoning of the property changed from medium-density residential to limited high-density residential. The zone change was approved by the hearings officer and affirmed by the city planning commission.

In affirming the zone change, the city ruled that the transportation planning rule set forth in OAR 660-012-0060 applied to the zone change request. However, the city declined to consider whether, pursuant to OAR 660-012-0060, the zone change would have a significant effect on the road on which the property is located. Instead, it decided to defer consideration of that issue to a later stage in development. It imposed a condition of approval that prohibited development on the property without approval of a PUD application and a showing of compliance with the transportation planning rule as part of the PUD application and review process. That condition provides:

> "Pursuant to [Eugene Code] 9.4310, no development permit may be approved for the subject property without prior City

approval of a Planned Unit Development (PUD). An application for a Tentative PUD for the subject property shall include analysis of the traffic impact. As part of the City's Type III review of the PUD, in addition to any applicable requirements of the Traffic Impact Analysis Review in the City Code, the City shall require the applicant to demonstrate consistency with the Transportation Planning Rule at OAR 660-012-0060."

Petitioner appealed to LUBA, contending that the city erred "in various ways in approving the zone change without conducting the analysis required under the [transportation planning rule] at the time it approved the zone change." Petitioner asserted that it was error for the city to fail to make a finding, at the time of the zone change, regarding whether the zone change would or would not have a significant effect on the transportation facility and to defer a finding on that issue to a later development stage. It also contended that the record contained evidence demonstrating that the zone change would, in fact, have a significant effect on transportation in the area and that the planning commission should have specified mitigation measures pursuant to OAR 660-012-0060(2). Finally, petitioner argued that the city could not lawfully impose a condition on the approval of the zone change. LUBA rejected all of petitioner's arguments and affirmed the city's decision, relying, in part, on its own precedent with respect to the city's defense of its decision under OAR 660-012-0060.

■ On review, petitioner makes four assignments of error. First, it contends that LUBA's order permits the city to improperly defer the evaluation required pursuant to OAR 660-012-0060 to a later stage in development. According to petitioner, the transportation planning rule must be considered at the time of the zone change. Second, petitioner argues that LUBA was required to reverse or remand the city's decision due to inadequate findings on the issues of significant effect and mitigation pursuant to OAR 660-012-0060. Third, according to petitioner, LUBA's order improperly "purports to require [the Department of Land Conservation and Development] to review permit applications that it has no statutory authority to review." (Boldface and uppercase omitted.) Fourth, and finally, petitioner asserts that LUBA erred

because its order permits local governments to alter zoning codes on a case-by-case basis. We write only to address whether, pursuant to OAR 660-012-0060, prior to approving the zone change, the city was required to evaluate whether that zone change would significantly affect transportation facilities. Petitioner's remaining assignments of error are either related to the first assignment or do not warrant discussion. We conclude that the rule requires that evaluation to be completed before the approval of the zone change and reverse on that basis.

LUBA's order "permits the City to avoid making any finding of 'significant [e]ffect' under the Transportation Planning Rule" before the approval of the zone change.[1] The parties agree that the zone change at issue in this case constitutes an amendment to a land use regulation and is within the purview of OAR 660-012-0060. *See Woodard v. City of Cottage Grove*, 225 Or App 282, 293-94, 201 P3d 210, *rev den*, 346 Or 362 (2009) (OAR 660-012-0060 regulates amendments to zoning maps). Accordingly, the resolution of petitioner's assignment of error depends on whether OAR 660-012-0060 requires that, before granting final approval of a zone change, a local government must consider and evaluate whether that change will significantly affect transportation facilities.[2] In other words, the issue we must consider is whether OAR 660-012-0060(1) contains a temporal requirement relating to the required analysis of a significant effect on transportation needs.

██ In interpreting an administrative rule, our objective is to determine the intent of the body that promulgated the

---

[1] ORS 227.175(4) provides that permit or zone change applications "shall not be approved unless the proposed development of land would be in compliance with the comprehensive plan for the city and other application land use regulation or ordinance provisions." Furthermore, under that statute, a local government may include in its approval of a zone change application "such conditions as are authorized by ORS 227.215 or any city legislation." Here, however, in addition to imposing a condition on its approval of the zone change, the city failed to consider and evaluate, prior to its approval of the zone change application, whether that zone change would significantly affect transportation facilities.

[2] OAR 660-012-0005(30) provides that a transportation facility is "any physical facility that moves or assist[s] in the movement of people or goods including facilities identified in OAR 660-012-0020 but excluding electricity, sewage and water systems." Facilities identified in OAR 660-012-0020 include, among other things, streets, bus and passenger rail systems, and bicycle and pedestrian routes.

rule. *State v. Papineau*, 228 Or App 308, 311, 208 P3d 500, *rev den*, 346 Or 590 (2009). To make that determination, we examine the text of the rule, in context. *Id.*; *see Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997) (in interpreting administrative rules, the court uses the same methodology as it does in interpreting statutes); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1142 (1993); *ODOT v. City of Klamath Falls*, 177 Or App 1, 8, 34 P3d 667 (2001). "Context includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *Abu-Adas*, 325 Or at 485.

OAR 660-012-0060(1) provides:

"Where an amendment to a functional plan, an acknowledged comprehensive plan, or a land use regulation *would* significantly affect an existing or planned transportation facility, *the local government shall put in place measures* as provided in section (2) of this rule to assure that allowed land uses are consistent with the identified function, capacity, and performance standards (*e.g.* level of service, volume to capacity ratio, etc.) of the facility. A plan or land use regulation amendment significantly affects a transportation facility if it would:

"(a)  Change the functional classification of an existing or planned transportation facility (exclusive of correction of map errors in an adopted plan);

"(b)  Change standards implementing a functional classification system; or

"(c)  As measured at the end of the planning period identified in the adopted transportation system plan [(TSP)]:

"(A)  Allow land uses or levels of development that would result in types or levels of travel or access that are inconsistent with the functional classification of an existing or planned transportation facility;

"(B)  Reduce the performance of an existing or planned transportation facility below the minimum acceptable performance standard identified in the TSP or comprehensive plan; or

"(C)   Worsen the performance of an existing or planned transportation facility that is otherwise projected to perform below the minimum acceptable performance standard identified in the TSP or comprehensive plan."

(Emphasis added.) OAR 660-012-0060(2) provides measures that must be taken "[w]here a local government determines that there would be a significant effect."[3]

The key language in the rule for purposes of the issue framed above is the phrase "the local government shall put in place measures" and the word "would." The words used in the text of the rule demonstrate that an evaluation of significant effect is intended to be performed *prior to* a contemplated amendment. The word "shall" in the phrase is mandatory as to the obligation of the local government. *See, e.g., Bacote v. Johnson*, 333 Or 28, 33, 35 P2d 1019 (2001) ("The term 'shall' is a command expressing what is mandatory."). In other words, unless the provisions of OAR 660-012-0060(3)

---

[3] In addition, OAR 660-012-0060(3) provides:

"Notwithstanding sections (1) and (2) of this rule, a local government may approve an amendment that would significantly affect an existing transportation facility without assuring that the allowed land uses are consistent with the function, capacity and performance standards of the facility where:

"(a)  The facility is already performing below the minimum acceptable performance standard identified in the TSP or comprehensive plan on the date the amendment application is submitted;

"(b)  In the absence of the amendment, planned transportation facilities, improvements and services as set forth in section (4) of this rule would not be adequate to achieve consistency with the identified function, capacity or performance standard for that facility by the end of the planning period identified in the adopted TSP;

"(c)  Development resulting from the amendment will, at a minimum, mitigate the impacts of the amendment in a manner that avoids further degradation to the performance of the facility by the time of the development through one or a combination of transportation improvements or measures;

"(d)  The amendment does not involve property located in an interchange area as defined in paragraph (4)(d)(C); and

"(e)  For affected state highways, ODOT provides a written statement that the proposed funding and timing for the identified mitigation improvements or measures are, at a minimum, sufficient to avoid further degradation to the performance of the affected state highway. However, if a local government provides the appropriate ODOT regional office with written notice of a proposed amendment in a manner that provides ODOT a reasonable opportunity to submit a written statement into the record of the local government proceeding, and ODOT does not provide a written statement, then the local government may proceed in applying sections (a) through (d) of this section."

apply, the local government has no discretion to refuse to put appropriate measures in place where "an amendment to * * * a land use regulation *would* significantly affect" a transportation facility. OAR 660-012-0060(1) (emphasis added).

The word "would" refers to a contingency or possibility in the future. As used in OAR 660-012-0060(1), it directly indicates the window in time in which a local government must evaluate the effect of an amendment; that is, before the amendment is allowed. Only after the local government makes a determination of whether an amendment will have a significant effect on a transportation facility can it approve the amendment and either put in place measures to mitigate the impact pursuant to OAR 660-012-0060(2) or make a determination pursuant to OAR 660-012-0060(3) that approval is permissible regardless of that effect. Put in other terms, the use of the word "would" in the rule makes clear that, *prior* to approving an amendment, the local government must determine whether the proposed amendment, if completed, will have the impact described in the rule. *See, e.g., Spathas v. City of Portland*, 133 Or App 275, 278, 891 P2d 664 (1995) (the phrase "would have allowed when established" in a local government land use code operated to impose a temporal requirement). As we observed in *Jaqua v. City of Springfield*, 193 Or App 573, 593, 91 P3d 817 (2004), "OAR 660-012-0060 serves to *prevent* local governments from engaging in land use decision-making without considering whether transportation systems can accommodate the proposed use."[4] (Emphasis in original.) Thus, based on the plain text of the rule, the local government was required to make a determination regarding whether the zone change would significantly affect transportation facilities *before* approving the amendment.

---

[4] The version of OAR 660-012-0060(1) discussed in *Jaqua* provided that "[a]mendments to * * * land use regulations which significantly affect a transportation facility shall assure that allowed land uses are consistent with the identified function, capacity, and performance standards (e.g. level of service, volume to capacity ration, etc.) of the facility." 193 Or App at 590 (quoting *former* OAR 660-012-660(1) (1999)). The court in that case stated that "the rule requires local governments to address *whether* a temporary failure of a transportation facility will occur *if* approval is given * * *." *Id.* at 592-93 (emphasis added). The language used in the current version of the rule is even clearer that consideration of whether a transportation facility will be significantly affected is to occur before approval of the requested land use regulation amendment.

Nonetheless, Goodpasture contends that a local government may "defer the [transportation planning rule] analysis to a later stage of development when the zone change is properly conditioned to ensure that the purposes of the [rule] are served in the interim." In *Gould v. Deschutes County*, 227 Or App 601, 206 P3d 1106 (2009), we interpreted a provision of the Deschutes County Code to allow deferral of approval by a local government of applicable mandatory approval criteria to a later stage depending upon preliminary conditions being satisfied. Nonetheless, OAR 660-012-0060(1) requires that an assessment of whether a "plan or land use regulation significantly affects a transportation facility" be made at the time of the adoption of the amendment. In contrast, OAR 660-012-0025, which applies to local governments' preparation of transportation system plans, specifically provides that "[a] local government * * * may defer decisions" on certain issues if it makes findings pursuant to the terms of that rule. In other words, although other rules may provide for deferral of certain land use decisions by local governments, OAR 660-012-0060(1) makes no provision for a deferral of the decision required by its provisions.

In light of the foregoing, we conclude that LUBA erred in holding that the city could permissibly grant the zone change in this case without first evaluating, pursuant to OAR 660-012-0060(1), whether the change would significantly affect transportation facilities.

Reversed and remanded to LUBA.