Argued and submitted August 11, on respondents Philip and Cynthia Boweses' motion to dismiss appeal as untimely filed July 27, petitioners' response filed August 5, and respondents Phillip and Cynthia Boweses' reply filed August 25, motion to dismiss denied; affirmed as to LUBA Case Numbers 2010-099, 2010-100, 2010-101, 2010-102, and 2010-103 December 14, 2011

Mark JONES
and Katharine Jones,
*Petitioners below,*

*and*

Linda HELLENTHAL;
Erik Hellenthal; Ben Dawson, Jr.;
Quinton Quisenberry; and Brook K. Quisenberry,
*Petitioners,*

*v.*

DOUGLAS COUNTY,
Philip Bowes, and Cynthia Bowes,
*Respondents.*

Land Use Board of Appeals
2010099, 2010100, 2010101, 2010102, 2010103;
A148612

270 P3d 278

Stephen Mountainspring argued the cause for petitioners. With him on the briefs was Dole, Coalwell, Clark, Mountainspring & Mornarich, P.C.

William K. Kabeiseman argued the cause for respondents Philip Bowes and Cynthia Bowes. With him on the brief were Edward J. Sullivan, Carrie Richter, and Garvey Schubert Barer.

Paul E. Meyer waived appearance for respondent Douglas County.

Before Haselton, Presiding Judge, and Duncan, Judge, and Walters, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

In 1995, Douglas County approved the establishment of an "owner of record" dwelling on the property of petitioners Philip and Cynthia Bowes (the Boweses). Over the next 15 years, the Boweses requested, and the county granted, 14 extensions of the original approval. In 2010, respondents, several neighboring property owners (the neighbors), appealed five of the county's extension decisions—*viz.*, the 1997, 1998, 1999, 2000, and 2002 decisions—to LUBA. LUBA dismissed those appeals for lack of jurisdiction, reasoning that, under the plain terms of OAR 660-033-0140(3),[1] the extension decisions were not land use decisions. The neighbors seek judicial review of LUBA's order.[2]

On review, the neighbors challenge the propriety of LUBA's dismissal of the appeals concerning the five extension decisions. Conversely, the Boweses move to dismiss this judicial review as it pertains to four of the five extension decisions—*viz.*, the 1997, 1998, 1999, and 2000 extension decisions—in light of House Bill (HB) 3166 (2011), which was enacted during the pendency of this review proceeding and retroactively imposed a 10-year statute of repose on the appeal of certain land use decisions, and contend that LUBA properly dismissed the neighbors' appeal of the fifth (2002) extension decision. Alternatively, the Boweses assert that, even if HB 3166 is inapposite, LUBA properly dismissed the neighbors' appeals of all five extension decisions.

For the reasons expressed in *Jones v. Douglas County (A148618)*, 247 Or App 56, 68, 270 P3d 264 (2011) (*Jones I*), we reject the Boweses' first argument and deny their motion to dismiss for lack of jurisdiction as it pertains to the first four extensions. However, as amplified below, we agree with the Boweses' alternative argument. Accordingly,

---

[1] The text of OAR 660-033-0140(3) is set out below, 247 Or App at 87.

[2] LUBA's order resolved six consolidated appeals. In addition to the five appeals of the county's extension decisions—which were designated as LUBA Case Numbers 2010-099, 2010-100, 2010-101, 2010-102, 2010-103—LUBA's order also resolved the appeal concerning the original 1995 approval. LUBA's remand of the appeal concerning the original approval is the subject of a separate review proceeding—*Jones v. Douglas County (A148618)*, 247 Or App 56, 270 P3d 264 (2011) (*Jones I*)—which we describe more fully below. 247 Or App at 86 n 3.

we affirm LUBA's dismissal of the neighbors' appeals of all five extension decisions.

We take the material facts from our decision in *Jones I.* The Boweses acquired their property on June 22, 1995—the day after the county approved the prior owner's request for a "lot-of-record" dwelling. Specifically, the county's decision stated, in pertinent part, that the lot-of-record

> " 'approval will become invalid without special action if the conditions of approval have not been met within two (2) years from the date of the decision[—that is, June 21, 1995]. An extension of up to twelve (12) months may be granted by the Director upon request of the applicant.' "

*Jones I*, 247 Or App at 60.

During the next two years, the Boweses did not attempt to satisfy the conditions of approval because Philip Bowes was serving in the military and the Boweses were apparently away from Oregon.

> "On June 17, 1997—four days before the June 21 expiration of the 1995 approval—the county sent the Boweses a letter indicating that the approval would soon expire and that they could request a 12-month extension on the attached form by June 27. Ultimately, the Boweses submitted a request for an extension, which was dated June 24. The county extended the approval for a year.

> "Similarly, each year thereafter from 1998 through 2010, the Boweses submitted a request for, and the county approved, a one-year extension. In addition to the 1997 request, the 1998, 1999, 2000, and 2002 requests, were submitted after the [approval's] annual June 21 expiration date. However, the Boweses timely requested an extension in 2010, which the county approved."

*Id.* at 60-61 (footnote omitted).

On October 25, 2010, the neighbors filed six separate appeals with LUBA, which LUBA consolidated by order. "The first concerned the 1995 lot-of-record approval. Each of the remaining five appeals concerned a particular extension that was requested after the approval's annual June 21 expiration date—*viz.*, the 1997, 1998, 1999, 2000, and 2002

extensions."[3] *Id.* at 61. Ultimately, as noted, LUBA dismissed those five appeals, concluding that it lacked jurisdiction because, under OAR 660-033-0140(3), the predicate extension decisions were not land use decisions.

Before recounting LUBA's rationale and the substance of the parties' contentions as to LUBA's jurisdiction, some context, providing statutory and regulatory orientation, is essential. We begin with the operative statutes.

Under ORS 197.825(1), LUBA has "exclusive jurisdiction to review any land use decision * * * of a local government[.]" Among other things, a "land use decision" is "[a] final decision or determination made by a local government * * * that concerns the adoption, amendment or application of" a "land use regulation."[4] ORS 197.015(10)(a)(A)(iii). However, there are a variety of exclusions to that definition. ORS 197.015(10)(b) - (e). For example, a "land use decision" does *not* include a local government decision "[t]hat is made under land use standards that do not require interpretation or the exercise of policy or legal judgment[.]" ORS 197.015(10)(b)(A).

Against that statutory backdrop, the Land Conservation and Development Commission (LCDC) promulgated OAR 660-033-0140. That rule implements Statewide Planning Goal 3, concerning agricultural land, as well as ORS 197.015. In its entirety, OAR 660-033-0140 provides:

"(1)    Except as provided for in section (5) of this rule, a discretionary decision, except for a land division, made

---

[3] As previously indicated, 247 Or App at 84 n 2, LUBA's ultimate resolution of the appeal concerning the 1995 approval is the subject our decision in *Jones I.* In that case, we held that HB 3166 imposed a 10-year statute of repose that retroactively deprived LUBA of jurisdiction over the appeal of the 1995 approval. 247 Or App at 61. For that reason, we remanded LUBA's order with instructions that LUBA vacate the portion of that order concerning the 1995 approval and dismiss the appeal of that approval. Accordingly, because this judicial review proceeding concerns only the county's extension decisions, our discussion of the pertinent procedural history, as well as our analysis and ultimate disposition, concern only those decisions.

[4] In turn, a "land use regulation" is defined as "any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan." ORS 197.015(11).

after the effective date of this division approving a proposed development on agricultural or forest land outside an urban growth boundary under ORS 215.010 to 215.293 and 215.317 to 215.438 or under county legislation or regulation adopted pursuant thereto is void two years from the date of the final decision if the development action is not initiated in that period.

"(2)   A county may grant one extension period of up to 12 months if:

"(a)   An applicant makes a written request for an extension of the development approval period;

"(b)   The request is submitted to the county prior to the expiration of the approval period;

"(c)   The applicant states reasons that prevented the applicant from beginning or continuing development within the approval period; and

"(d)   The county determines that the applicant was unable to begin or continue development during the approval period for reasons for which the applicant was not responsible.

"(3)   *Approval of an extension granted **under** this rule is an administrative decision, is not a land use decision as described in ORS 197.015 and is not subject to appeal as a land use decision.*

"(4)   Additional one-year extensions may be authorized where applicable criteria for the decision have not changed.

"(5)(a)   If a permit is approved for a proposed residential development on agricultural or forest land outside of an urban growth boundary, the permit shall be valid for four years.

"(b)   An extension of a permit described in subsection (5)(a) of this rule shall be valid for two years.

"(6)   For the purposes of section (5) of this rule, 'residential development' only includes the dwellings provided for under ORS 215.213(1)(q), (3) and (4), 215.283(1)(p),

215.284, 215.705(1) to (3), 215.720, 215.740, 215.750 and 215.755(1) and (3)."[5]

(Emphasis and boldface added.)

In light of that statutory and regulatory framework, we return to the parties' positions before LUBA. For their part, the neighbors contended that both the initial 1995 approval and the five challenged extensions were land use decisions within LUBA's jurisdiction. The neighbors further contended that the extensions were invalid because they failed to satisfy the requirements of OAR 660-033-0140 and, as a consequence, could not effectively extend the expiration date of the 1995 approval.[6]

More specifically, with respect to jurisdiction, the neighbors initially contended that the original 1995 approval and the challenged extensions

> "are land use decisions over which LUBA has jurisdiction pursuant to ORS 197.825(1) because they are final decisions by a local government that concern the application of the statewide planning goals, the county comprehensive plan, and the county land use regulations and that require interpretation or exercise of policy or legal judgment, within the meaning of ORS 197.015(10)."

[5] As LUBA explained, "[i]n 2001, the legislature adopted a statute, ORS 215.417, providing that extensions of approvals for residential development in resource zones, including lot-of-record dwellings, shall be valid for two years, instead of the one year extension that would otherwise apply under OAR 660-033-0140(2)." That development is reflected in subsections (5) and (6), which were added to the rule in May 2002. Because the duration of each of the extensions challenged in this case is not material to our analysis and disposition, we refer to the current version of the rule.

Further, at all pertinent times, Douglas County Land Use and Development Ordinance (LUDO) 2.800 essentially mirrored OAR 660-033-0140. Apparently for that reason, LUBA referred to the administrative rule rather than the corresponding provisions of the county's development ordinance, as do the parties on review. For convenient reference, so do we.

[6] In particular, the neighbors asserted that (1) each extension request was untimely because it was submitted after the approval's annual June 21 expiration date, OAR 660-033-0140(2)(b); (2) each extension did not include a county determination that the Boweses were unable to begin or continue development for reasons for which they were not responsible, OAR 660-033-0140(2)(d); and (3) the 1999 extension was granted even though the applicable criteria concerning a lot-of-record dwelling approval had changed, OAR 660-033-0140(4).

In other words and as pertinent here, the neighbors posited that the extension decisions were not excluded from the statutory definition of "land use decision" because they were not "made under land use standards that do not require interpretation or the exercise of policy or legal judgment[.]" ORS 197.015(10)(b)(A). Further, the neighbors noted that, although OAR 660-033-0140(3) provides that "an extension decision granted under LUDO 2.800 or OAR 660-033-0140 is not a land use decision and is not subject to appeal," LUBA's prior decisions indicated that permit extensions—such as the extensions in this case—are "land use decisions" over which LUBA has jurisdiction.

During the course of the LUBA proceeding, the neighbors refined their position with respect to LUBA's jurisdiction. Specifically, the neighbors explained:

"[We] are willing to concede that an extension properly granted under [OAR 660-033-0140] is not a land use decision, as provided in [OAR 660-033-0140(3)]. An extension validly granted is really of no concern to the neighbors, the general public, or the county body. The approval standards for the original permit were shown to be complied with during the original proceedings (presumably; not the case here). The extension procedure, when followed, is quite ministerial.

"* * * * *

"The problem occurs when the extension procedure of [OAR 660-033-0140] is not followed. [OAR 660-033-0140] does not authorize the county to grant an extension after the permit has expired. When the county attempts to do so, its authority does not derive from [OAR 660-033-0140]. It is acting without authority. [The Boweses] have cited no statute, rule, or case (other than LUDO 2.800 and its DLCD rule analogue) which would provide the county with extension authority; and [we] assert there is no such extension authority other than those, of course.

"The county did not follow [OAR 660-033-0140] in extending the permit in 1997, 1998, 1999, 2000, or 2002. Because those extensions were unlawful, they did not operate to extend the permit's approval period, which therefore lapsed. Accordingly, the permit became void."

To summarize, the gravamen of the neighbors' jurisdictional position before LUBA was that the county's extension decisions were not granted "under" OAR 660-033-0140—and, for that reason, the jurisdictional limitation of OAR 660-033-0140(3) was inapposite. More particularly, as we understand it, the neighbors contended that, when a local government's approval of an extension satisfies the requirements of OAR 660-033-0140—in other words, when approval is in compliance with the requirements of the rule—the extension is granted "under" the rule and is "not a land use decision" as OAR 660-033-0140(3) provides. Conversely, the neighbors contended that, when a local government's approval of an extension is not in compliance with the requirements of the rule—as occurred here—the extension is *not* granted "under" the rule and, for that reason, OAR 660-033-0140(3) does not apply and the decision may be appealed to LUBA.

In response, the Boweses asserted that LUBA lacked jurisdiction for three reasons: (1) LUDO 2.800 and OAR 660-033-0140(3) both "make clear that these extensions are not land use decisions or otherwise appealable to LUBA"; (2) the neighbors failed to timely appeal the extensions; and (3) the appeals were moot. In addition, the Boweses contended that, because the appeals concerned extensions of an original approval that was more than 15 years old, LUBA was required to dismiss the appeals either under the equitable doctrine of laches or under ORS 12.140, which provides that "[a]n action for any cause not otherwise provided for shall be commenced within 10 years."

LUBA rejected the Boweses' contentions concerning the timeliness of the appeals, mootness, the doctrine of laches, and ORS 12.140. However, LUBA agreed with the Boweses that, under OAR 660-033-0140(3), the extension decisions were not land use decisions subject to its jurisdiction.

In addressing the applicability of OAR 660-033-0140(3), LUBA began by distinguishing several of its prior opinions in which it had addressed the nature of an extension decision. LUBA explained that,

"[i]n each of [those] cases we either held or there was no dispute that the challenged permit extension decision was

both a land use decision subject to LUBA's jurisdiction under ORS 197.015(10), and a discretionary 'permit' decision for purposes of ORS 215.402 and the corresponding statute applicable to cities. * * * However, it is important to note that none of [those decisions] appear[s] to involve extensions of permits for development on farm or forest land, or otherwise did not involve circumstances controlled by OAR 660-033-0140.

"Our reasoning in the above cases, if extended to permit extensions on farm or forest land under OAR 660-033-0140, would directly conflict with OAR 660-033-0140(3), which as noted provides that a permit extension under the rule is 'not a land use decision as described in ORS 197.015 and is not subject to appeal as a land use decision.' * * * OAR 660-033-0140(3) possibly represents LCDC's interpretation of the ORS 197.015(10) definition of 'land use decision' or one of the exclusions to that definition, at ORS 197.015(10)(b). Or possibly it represents the creation of an additional exclusion, independent from those set out in the statute. LCDC has general statutory authority to 'adopt rules that it considers necessary to carry out ORS chapters 195, 196 and 197.' ORS 197.040(1)(b). LCDC also has broad statutory authority to adopt rules regarding use of farm and forest lands. *See generally Lane County v. LCDC*, 325 Or 569, 942 P2d 278 (1997). Petitioners do not argue that OAR 660-033-0140(3) exceeds LCDC's authority, or is inconsistent with any statute, and we express no opinion in that regard. Because petitioners offer no basis for concluding that OAR 660-033-0140(3) does not control the present circumstances, we apply and give effect to the rule."

LUBA concluded that, "[u]nder the plain terms of OAR 660-033-0140(3), a decision extending a permit decision on agricultural or forest land is not a 'land use decision' as defined in ORS 197.015 and therefore is not subject to LUBA's jurisdiction." The implicit, but necessary, predicate of LUBA's holding is that, regardless of any asserted noncompliance with OAR 660-033-0140, the extensions in this case were granted "under" OAR 660-033-0140 in that that rule was the purported source of authority for the extension.

On judicial review of the ensuing order of dismissal, the neighbors' primary contention is that, because the county did not comply with the requisites of OAR 660-033-0140

when it made the challenged extension decisions, those decisions were not "granted under [that] rule," OAR 660-033-0140(3), and, thus, are not subject to subsection (3)'s jurisdictional limitation.[7] Conversely, as we understand it, the Boweses contend that LUBA correctly concluded that the extension decisions were granted "under" OAR 660-033-0140 and, as a consequence, those decisions were not land use decisions because OAR 660-033-0140(3) explicitly so provides.

As so framed, we understand the parties' competing contentions to reduce to a single dispositive interpretive issue: For purposes of OAR 660-033-0140(3), were the approvals of the challenged extensions granted "under" OAR 660-033-0140? In resolving that question our inquiry is straightforward:

"In interpreting an administrative rule, our objective is to determine the intent of the body that promulgated the rule. *State v. Papineau*, 228 Or App 308, 311, 208 P3d 500, *rev den*, 346 Or 590 (2009). To make that determination, we examine the text of the rule, in context. *Id.*; *see Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997) (in interpreting administrative rules, the court uses the same methodology as it does in interpreting statutes); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 114[3] (1993); *ODOT v. City of Klamath Falls*, 177 Or App 1, 8, 34 P3d 667 (2001). 'Context includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes.' *Abu-Adas*, 325 Or at 485."

*Willamette Oaks, LLC v. City of Eugene*, 232 Or App 29, 33-34, 220 P3d 445 (2009).

---

[7] Alternatively, the neighbors contend that, if the extension decisions are not land use decisions under OAR 660-033-0140(3), OAR 660-033-0140 is invalid because it "purports to modify LUBA's subject matter jurisdiction by removing such cases from the review jurisdiction, namely, by defining extension decisions to be outside the statutory definition of land use decisions." However, as the Boweses and LUBA correctly noted, that contention was not preserved. Accordingly, we do not address it. *See Hammer v. Clackamas County*, 190 Or App 473, 480, 79 P3d 394 (2003), *rev den*, 337 Or 34 (2004) (affirming LUBA's dismissal of the petitioners' appeal because it was untimely; reasoning that, where the petitioners did not discuss a particular statute before LUBA or argue its applicability to the county's action, we would not reach the question whether the notice requirements of that statute had been satisfied or "what effect defective notice * * * might have on the time limits to seek LUBA review"); *see generally* ORAP 5.45(1).

We begin with the meaning of the word "under." Although, generally, the term "under" means "in accordance with," *Webster's Third New Int'l Dictionary* 2487 (unabridged ed 2002), in the legal context, the term "under" is often used in lieu of the term "pursuant to." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 896 (2d ed 1995) (the term "under is preferable to *pursuant to* when the noun that follows refers to a rule, statute, contractual provision, or the like" (boldface omitted; emphasis in original)). In turn and as pertinent here, "pursuant to" means either "[i]n compliance with; in accordance with; under" or "[a]s authorized by; under." *Black's Law Dictionary* 1272 (8th ed 2004).

As noted, the neighbors essentially contend that, for purposes of OAR 660-033-0140(3), "under" must mean "in compliance with" or "in accordance with," while LUBA necessarily interpreted the term to mean "as authorized by." For the reasons explained below, when viewed in the context of the rule as a whole, we agree with LUBA that "under," as used in OAR 660-033-0140(3), means "as authorized by." *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("In construing statutes, we do not simply consult dictionaries and interpret words in a vacuum. Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)).

Here, the parties agree that, in the overarching context of OAR 660-033-0140, subsection (3) operates as a limitation on LUBA's jurisdiction to review extension decisions; their dispute centers on the *scope* of that limitation. The difficulty with the neighbors' proposed construction—*viz.*, that an extension is "under" OAR 660-033-0140 only so long as the local government complies with the rule—is that it would render subsection (3) a functional nullity. That is so because, in every appeal in which an extension decision was challenged, LUBA, to determine whether it had jurisdiction over the appeal, would be required, as a practical matter, to first assess the procedural and substantive propriety of the extension decision. If the extension decision comported with the requisites of OAR 660-033-0140, then (in the neighbors'

view), LUBA would not have jurisdiction because the extension was "under" the rule; conversely, if the extension decision did not comport with the requisites of the rule, then (again, in the neighbors' view), LUBA would have jurisdiction because the extension was not "under" the rule. Bluntly: in every appeal, LUBA, to determine its jurisdiction, would be required to review and decide the merits of the appeal. The jurisdictional limitation would be rendered meaningless.

Like LUBA, we reject that construction of subsection (3)—and the term "under" specifically—as implausible. Rather, and consistently with subsection (3)'s patent purpose of limiting LUBA's review of extension decisions, "under" is properly understood to mean "as authorized by." That is, so long as the local government has purported to allow an extension under the authority of OAR 660-033-0140, subsection (3) operates to preempt LUBA review.

Here, it is undisputed that OAR 660-033-0140—as implemented in the county code—was the source of the county's authority to grant extensions concerning the original 1995 lot-of-record approval. That is so even though the county erroneously exercised that authority by granting untimely extension requests in contravention of the requirements of the rule. Stated differently, although the extensions resulted from the county's erroneous exercise of its authority, the extensions, nevertheless, were granted "under" the rule.

In sum, we conclude that, because the challenged extensions were granted under OAR 660-033-0140, they were not land use decisions subject to LUBA's jurisdiction. OAR 660-033-0140(3).[8] Accordingly, we affirm LUBA's dismissal of the appeals concerning the challenged extensions.[9]

Motion to dismiss denied. Affirmed as to LUBA Case Numbers 2010-099, 2010-100, 2010-101, 2010-102, and 2010-103.

---

[8] Nothing in our opinion should be understood to imply a view as to the availability of alternative modes of review in circuit court.

[9] Our disposition in that regard obviates the need to consider the Boweses' contentions concerning mootness, laches, and the applicability of ORS 12.140, which might have served as alternative bases on which to affirm LUBA's dismissal of the appeals.