Argued and submitted September 12, 2007, affirmed February 13, petition for review denied June 18, 2008 (344 Or 670)

In the Matter of the Adoption of
G. I. B., aka G. I. B. D.,
a Minor Child.

J. B. D.,
*Appellant,*

*v.*

PLAN LOVING ADOPTIONS NOW, INC., (PLAN),
E. A. T., and P. A. T.,
*Respondents.*

Marion County Circuit Court
05C-31924; A133920

178 P3d 266

Monica L. Finch argued the cause for appellant. With her on the brief was Eli D. Stutsman.

Gilbert B. Feibleman argued the cause for respondents. With him on the joint brief were Feibleman & Case, P.C., for respondent Plan Loving Adoptions Now, Inc., (PLAN), and Scott C. Adams and Law Offices of Scott C. Adams for respondents E. A. T. and P. A. T.

Before Landau, Presiding Judge, and Schuman and Ortega,* Judges.

SCHUMAN, J.

---

* Ortega, J., *vice* Riggs, S. J.

## SCHUMAN, J.

Plaintiff, the birth mother of G, released and surrendered him to an adoption agency called Plan Loving Adoptions Now, Inc., (PLAN), and consented to his adoption from that agency. G was subsequently adopted by E. T. and P. T. (the Ts). Thereafter, plaintiff filed a motion to set aside the adoption. The trial court denied that motion, and plaintiff appeals. We affirm.

The following facts are undisputed. When plaintiff was approximately three-months pregnant, she contacted PLAN, an Oregon-licensed adoption agency, regarding the placement of her unborn child. PLAN introduced plaintiff to potential adoptive parents, and, after several meetings that did not lead to a mutually satisfactory arrangement, plaintiff ultimately met the Ts. Because they expressed a willingness to permit some degree of relationship between plaintiff and her child after adoption, plaintiff agreed that they would be acceptable adoptive parents. In the months before G's birth, plaintiff and the Ts visited each other frequently and apparently developed a good relationship. By that time, the birth father had consented to the adoption; he is not involved in this case.

G was born on June 3, 2005. Two days later, PLAN visited plaintiff in the hospital and presented her with two documents required by ORS 418.270 and ORS 418.275. Those statutes authorize and govern so-called "agency adoptions," that is, adoptions in which the birth parents relinquish to a licensed agency their parental rights regarding a child and authorize the agency to place the child in an adoptive home.[1] In the first document, "Surrender, Release and

---

[1] ORS 418.270 provides, in part:

"(1) If licensed for such purposes by the Department of Human Services, a private child-caring agency may receive children from their parents or legal guardians for special, temporary or continued care. The parents or guardians may sign releases or surrenders giving to such agencies guardianship and control of the persons of such children during the period of such care, which may be extended until the children arrive at legal age. Such releases do not surrender the rights of such parents or guardians in respect to the adoption of such children and do not entitle such organization to give consent to the adoption of the children unless the release or surrender expressly recites that it is given for the purpose of adoption. Private child-caring agencies are authorized to

Consent to Adoption," plaintiff released to PLAN all of her parental rights to G "with the intent and understanding that PLAN would have authority to place the child for adoption and to consent to any adoption of the child." She also signed a "Certificate of Irrevocability." That document stipulated that her consent and release became "irrevocable" as soon as PLAN placed G in the custody of someone else for the purpose of adoption; it also contained a waiver of her right to notice of, and appearance in, any legal proceeding involving adoption of G. Plaintiff signed both forms, and PLAN placed G with the Ts that day.

For approximately two months, plaintiff frequently visited G at the Ts' home. Then, around July 24, 2005, the Ts began to restrict her access to G. Shortly thereafter, plaintiff sought legal advice and had no further contact with G, adoptive parents, or PLAN until this proceeding began.

The Ts obtained a judgment of adoption on September 1, 2005; plaintiff neither sought to intervene, nor to otherwise appear in the proceeding, nor, by the time of the proceeding, did she indicate to the Ts, the court, or (insofar as the record indicates) any person except perhaps her attorney, that she intended to revoke her consent. However, on October 26, 2005, some two months after the judgment, plaintiff, having apparently decided to challenge the .adoption, had her attorney prepare a petition to open the sealed file in the adoption proceeding. She did not notify PLAN or the Ts of the petition, and the court never responded to it. The lack of response

---

place children for adoption or foster care only if authorized by the department in the license issued by the department.

"* * * * *

"(4) Parents or legal guardians of children whom they have by release or surrender agreement given into the guardianship of incorporated child-caring agencies for the purpose of adoption may, concurrently or subsequently and without any adoption proceeding having been initiated, agree that the release or surrender shall become irrevocable as soon as the child is placed by the agency in the physical custody of a person or persons for the purpose of adoption by them, and waive their right to personal appearance in court in matters of adoption of such children, by a duly signed and attested certificate. From and after such physical placement for adoption such certificate of irrevocability and waiver and the release or surrender may not be revoked by the parent or guardian unless fraud or duress is affirmatively proved."

Under ORS 418.275(2), "[i]f the agency deems the action proper and desirable, it may consent in loco parentis to the legal adoptions of the children, subject to the conditions provided in ORS 418.270."

was due either to administrative confusion resulting from the need to relocate records from the Marion County Courthouse after a fire or to the fact that plaintiff's attorney did not pursue his request.

On May 1, 2006—that is, approximately 11 months after surrendering G to PLAN and consenting to his adoption and eight months after the adoption judgment—plaintiff filed a motion to set that judgment aside. She alleged that (1) PLAN and the Ts obtained her consent by fraud or misrepresentation; (2) her consent was invalid due to duress; (3) she lacked capacity to give consent; and (4) the judgment should be set aside under ORCP 71 B(1)(a) through (d).[2] The trial court denied plaintiff's motion after a pretrial hearing. The judgment recited several reasons for the denial: plaintiff lacked "standing"; her motion was not timely filed; she was estopped from challenging the adoption; and the allegations in her motion were insufficient to support a finding of fraud, misrepresentation, duress, or incapacity. Plaintiff appeals, and we affirm.

This case presents a narrow and novel question: Can a birth parent who has consented to an agency adoption, and who has neither attempted to revoke her consent nor intervened in the adoption proceeding, subsequently invoke the jurisdiction of the court by moving to set aside the judgment of adoption if the motion is made within a year of the judgment?[3] Four considerations color (but do not control) our

---

[2] ORCP 71 B(1) provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 64 F; (c) fraud, misrepresentation, or other misconduct of an adverse party; (d) the judgment is void; * * *. A motion for reasons (a), (b), and (c) shall be accompanied by a pleading or motion under Rule 21 A which contains an assertion of a claim or defense. The motion shall be made within a reasonable time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment."

[3] We limit our inquiry to motions such as plaintiff's that were filed within one year from the entry of the adoption judgment because challenges to adoption judgments filed after that period are expressly prohibited by ORS 109.381, discussed below, unless due process considerations preclude application of that statute. *See Phariss v. Welshans*, 150 Or App 498, 503, 946 P2d 1160 (1977) (holding that application of one-year statute of limitations against birth father who received no notice of adoption proceedings violated Due Process Clause).

treatment of this question. First, adoptions in Oregon are governed by statute:

> "[T]he court in adoption proceedings is exercising a special statutory power not according to the course of the common law, and when its decree is called in question, even collaterally, no presumptions in favor of jurisdiction are indulged, but the facts necessary for jurisdiction must appear affirmatively, on the face of the record."

*Hughes v. Aetna Casualty Co.*, 234 Or 426, 432-33, 383 P2d 55 (1963). Second, one of the legislative policies reflected in the adoption statutes is to promote finality to adoption judgments. *Hogue v. Olympic Bank*, 76 Or App 17, 28, 708 P2d 605 (1985), *rev den*, 300 Or 585 (1986). Third, in a proceeding to effect an *agency* adoption such as the one at issue in this case, the birth parent is not a party and has no right to notice or participation. ORS 418.270; ORS 418.275; *Sant v. Open Adoption and Family Services, Inc.*, 153 Or App 114, 120-21, 956 P2d 226 (1998). And fourth, despite the parties' and the trial court's characterization, this case does not implicate a question of "standing." The issue in this case is not whether plaintiff has standing, but whether any statute or other principle of law enables her to seek judicial nullification of the judgment in a case to which she was not a party.

Plaintiff argues that three sources enable her to move to set aside the judgment of adoption: ORS 109.381(3), ORCP 71 B(1)(a), and the court's inherent powers. For the reasons that follow, we disagree.

Plaintiff's primary argument relies on ORS 109.381(3):

> "After the expiration of one year from the entry of a judgment of adoption in this state the validity of the adoption shall be binding on all persons, and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned the child and consented to the entry of such judgment of adoption, and that the child became the lawful child of the adoptive parents or parent at the time when the judgment of adoption was rendered, all irrespective of jurisdictional or other defects in the adoption proceeding. *After the expiration of the one-year period no one may question the validity of the adoption for any reason,*

*either through collateral or direct proceedings, and all per-
sons shall be bound thereby.* However, the provisions of this
subsection shall not affect the right of appeal from a judg-
ment of adoption as may be provided by law."

(Emphasis added.) Plaintiff contends that the negative impli-
cation of ORS 109.381(3) is that a nonparty to an adoption
proceeding who can demonstrate a constitutionally sufficient
interest in the judgment of adoption *may* challenge that judg-
ment within one year. Based on the text and context of the
statute, however, we are persuaded that plaintiff is wrong.

First, nothing in the text amounts to an affirmative
authorization to bring an action within one year; rather, it is
a statute of limitation. *Hughes*, 234 Or at 448. The fact that
an action is filed within a limitation period does not imply
that a court must therefore adjudicate it. For example, a
court need not adjudicate a timely filed tort claim by a plain-
tiff claiming damages due to reading about an automobile
accident in the newspaper. Second, although the last sen-
tence of the statute deals technically with appeals from adop-
tion judgments and not motions to set them aside, the clear
implication is that challenges to adoption judgments find
their source in other provisions of law. If ORS 109.381(3)
itself "provided by law" a method to challenge a judgment of
adoption, the sentence would be nonsense. Third, ORS
109.381(3) replaced *former* ORS 109.380, which affirmatively
stated that a birth parent "may, at any time within one year
* * * apply to the circuit court to reverse the [adoption]
decree." *Former* ORS 109.380 (1957), *repealed by* Or Laws
1959, ch 609, § 5. Thus, the legislature eliminated wording
that would expressly have allowed plaintiff to bring this
action and replaced it with wording that does not. And
finally, we have held that ORS 109.381 "does not provide a
'different procedure' than the rules [of civil procedure] for
objecting to a decree of adoption." *Wimber v. Timpe*, 109 Or
App 139, 144, 818 P2d 954 (1991) (quoting ORCP 1 A).

We therefore turn to plaintiff's argument under
ORCP 71 B(1)(a), quoted above, 218 Or App at 79 n 2. We
note, preliminarily, that there is some authority for the prop-
osition that ORCP 71 simply does not apply to adoption
cases. In *Hallford v. Smith*, 120 Or App 57, 64, 852 P2d 249,

*rev den*, 317 Or 485 (1993), a biological father, who had neither participated in nor received notice of the proceeding that led to the adoption of his son, attempted to set aside the adoption judgment on the basis of ORS 109.096(8), "a specific statute governing when a court may set aside an adoption judgment based on specific allegations of a petitioner's fraud in the adoption proceeding." He also relied on ORCP 71 C. We held that he could not challenge the judgment under ORS 109.096(8) because the time limit stated in that statute had elapsed. *Id.* at 63. Regarding his alternative argument, we held that ORCP 71 was a general statute and therefore could not control over the more specific ORS 109.096(8). *Id.* at 64. In a footnote, we also stated, "Because we conclude that ORCP 71 is not available to a person seeking relief from an adoption judgment, we do not decide whether a non-party may move to set aside a judgment under ORCP 71 B(1)(c) or ORCP 71 C." *Id.* at 64 n 8. Because we also held that ORCP 71 C was superseded by ORS 109.096(8), the statement in the footnote was *dictum*. It probably should have read, "Because we conclude that ORCP 71 is not available to *this* person *because his case is governed by a more specific statute*, we do not *need to* decide * * *."

In any event, a few years after *Hallford*, we decided *Phariss v. Welshans*, 150 Or App 498, 946 P2d 1160 (1997). *Phariss* involved a biological father's attempt, beyond the one-year deadline established by ORS 109.381(3), to vacate the judgment establishing his son's adoption. We held that, because the biological father was entitled to notice of the impending adoption but had never received it, application of the statute against him violated his rights under the Due Process Clause. *Id.* at 503. In a footnote to the first sentence of the opinion, we stated, without analysis or explanation, "ORCP 71 B does not apply to adoption cases," citing *Hallford*. *Phariss*, 150 Or App at 500 n 1. Like the statement in *Hallford* to which it referred, this note was *dictum*.

Meanwhile, well before either *Hallford* or *Phariss*, we held in *Wimber*, 109 Or App at 144, without reservation, "ORCP 71 applies to actions under ORS 109.381." That statement was neither *dictum* nor merely incidental; it was central to our opinion. The case addressed the question whether a biological father could move to vacate the adoption of his

child by an adoptive father who, three years after the adoption, sexually abused the child. We held that he could not. *Id.* at 146. We began with the presumption that "[a] court, in dealing with an adoption, has only such powers as are conferred by statute or that can be regarded as inherent powers." *Id.* at 142. We then examined the birth father's claim under ORS 109.381(3) and concluded that, contrary to the birth father's argument, the one-year limitation period in that statute was not tolled by the child's minority; that statute, therefore, barred the biological father's challenge. *Id.* at 144. We then turned to the biological father's alternative argument:

> "[The biological father] also argues that the trial court had the authority to vacate the adoption under ORCP 71. Oregon Rules of Civil Procedure apply to all civil actions and special proceedings, except where a different procedure is specified by statute or rule. ORCP 1 A. ORS 109.381(3) refers to 'collateral or direct proceedings,' but it does not provide a 'different procedure' than the rules for objecting to a decree of adoption. Therefore, ORCP 71 applies to actions under ORS 109.381."

*Id.* We concluded, however, that ORCP 71 B(1)(c) did not help the biological father any more than ORS 109.381(3), and for the same reason: the one-year limitation period had elapsed. *Id.* at 145.

■ *Wimber* has never been overruled. It remains the only case directly confronting the question of ORCP 71's applicability to adoption proceedings, analyzing that question, and providing a conclusion. None of the opinions in cases indicating a contrary conclusion provides any explanation and none contains a contrary holding. We therefore now reaffirm that, as we held in *Wimber*, ORCP 71 applies to adoption judgments, and we disavow any contrary statements in other cases.

ORCP 71 B, however, does not apply to *this* adoption judgment. That is so because the rule, quoted above, permits a court to provide relief from a judgment only to "a party or such party's legal representative." Plaintiff was not a party or the legal representative of one. *See* ORS 418.270; ORS 418.275; *Sant*, 153 Or App at 120-21.

■      A different provision of ORCP 71, however, contains no such limitation. ORCP 71 C provides, in part:

> "This rule does not limit the inherent power of a court to modify a judgment within a reasonable time * * *."

Although only a "party" can invoke the court's jurisdiction for relief from a judgment, the rule nonetheless does provide that the court has the inherent power to "modify" a judgment, apparently regardless of whether the person seeking modification is a party, so long as it does so "within a reasonable time." Assuming (without deciding) that plaintiff's motion to set aside the adoption judgment can be construed as a motion to modify that judgment, plaintiff was entitled to an adjudication on the merits of her motion under the court's inherent authority, ORCP 71 C, despite her nonparty status, if the motion was made "within a reasonable time." That conclusion, however, does not help plaintiff.

      We review a court's decision whether to set aside a judgment under ORCP 71 for abuse of discretion. *Cam and Cam*, 216 Or App 358, 364, 174 P3d 1018 (2007); *see also State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 155, 168 P3d 798 (2007) (review of whether a motion is filed within "reasonable time" is for abuse of discretion even within a case where general standard of review is *de novo*). Under that standard, we conclude that the trial court did not err. Plaintiff surrendered G to PLAN and relinquished her right to participate in adoption proceedings on June 5, 2005. Within two months, after the Ts cut back (but did not eliminate) plaintiff's visits with G, plaintiff ceased all contact with G and the Ts and retained an attorney. At no time before the adoption hearing took place and the judgment was signed (August 24, 2005) did she indicate to the Ts, the court, or (insofar as the record reveals) anybody else that she wanted to revoke her surrender and consent. Two months after the adoption judgment, she claims to have filed a motion to unseal the adoption records, but did not inform the Ts or their attorney. Finally, after yet another seven months, she filed her motion to set aside the judgment. In the 11 months during which the Ts bonded with G, during at least the last 10 of which plaintiff was represented by counsel and believed that the Ts had

defrauded her, she ignored both the judgment and G. In finding that her delay was not reasonable, the trial court did not abuse its discretion.

In sum, although plaintiff filed her motion to set aside the adoption judgment to which she was not a party within the one-year limitation period established by ORS 109.381, that statute provided her with no affirmative power to obtain an adjudication of her motion; such power must derive from some other source of law. The only source that plaintiff proposes is ORCP 71. That rule, although it does apply to motions to set aside adoption judgments, does not help plaintiff because she is neither a party nor a nonparty who filed her motion within a reasonable time.

Affirmed.