Argued and submitted August 11, on petitioners' motion to dismiss appeal as untimely filed July 27, respondents Linda Hellenthal, Erik Hellenthal, Ben Dawson, Jr., Quinton Quisenberry, and Brook K. Quisenberry's response filed August 5, and petitioners' reply filed August 25, motion to dismiss denied; remanded to LUBA with instructions to vacate portions of its order concerning LUBA Case Number 2010-098 and to dismiss that appeal December 14, 2011

Mark JONES;
Katharine Jones; Linda Hellenthal;
Erik Hellenthal; Ben Dawson, Jr.;
Quinton Quisenberry; and Brook K. Quisenberry,
*Respondents,*

*v.*

DOUGLAS COUNTY,
*Respondent,*

*and*

Philip BOWES
and Cynthia Bowes,
*Petitioners.*

Land Use Board of Appeals
2010098; A148618

270 P3d 264

William K. Kabeiseman argued the cause for petitioners. With him on the brief were Edward J. Sullivan and Garvey Schubert Barer.

Stephen Mountainspring argued the cause for respondents Linda Hellenthal, Erik Hellenthal, Ben Dawson, Jr., Quinton Quisenberry, and Brook K. Quisenberry. With him on the brief was Dole, Coalwell, Clark, Mountainspring & Mornarich, P.C.

Paul E. Meyer waived appearance for respondent Douglas County.

No appearance for respondents Mark Jones and Katharine Jones.

Before Haselton, Presiding Judge, and Duncan, Judge, and Walters, Judge pro tempore.

HASELTON, P. J.

**HASELTON, P. J.**

In 1995, Douglas County approved the establishment of an "owner of record" dwelling on the property of petitioners Philip and Cynthia Bowes (the Boweses). Respondents, several neighboring property owners (the neighbors), appealed the county's 1995 decision to LUBA in 2010. LUBA remanded that decision because the county had not complied with the applicable notice requirements. The Boweses seek judicial review of LUBA's order.[1]

However, while the Boweses' review proceeding was pending in this court, the legislature enacted House Bill (HB) 3166 (2011), which retroactively imposed a 10-year statute of repose on the appeal of certain land use decisions. Thereafter, the Boweses moved to dismiss, contending that, because the new repose period bars the neighbors' appeal of the county's 1995 decision to LUBA, neither LUBA nor this court has jurisdiction. For the reasons that follow, we reject the neighbors' state and federal constitutional challenges to the retroactive application of HB 3166 and conclude that LUBA's order remanding the 1995 decision was unlawful in substance, ORS 197.850(9), because LUBA lacked jurisdiction over the neighbors' appeal of that decision. Accordingly, we remand to LUBA with instructions to vacate the portions of its order concerning the 1995 decision—that is, LUBA Case Number 2010-098—and dismiss the appeal of that decision.[2]

The material facts, which we state consistently with LUBA's findings, are not contested on review. The Boweses own a 78.43-acre parcel in Douglas County that, as LUBA indicated, is "located in a farm-forest zone, an exclusive farm use (EFU) zone in the county." Private easements run across neighboring properties and provide access to the parcel.

---

[1] In addition to resolving the appeal of the 1995 approval—which was designated as LUBA Case Number 2010-098—LUBA's order also resolved several consolidated appeals concerning five county decisions to extend that approval. LUBA's dismissal of the appeals concerning the extensions is the subject of a separate judicial review proceeding, which we describe more fully below. *See* 247 Or App at 61 n 6.

[2] Also, as described below, 247 Or App at 68, we deny the Boweses' motion to dismiss this review proceeding.

In May 1995, a prior owner of the Boweses' property applied to the county for the approval of a single-family dwelling—commonly referred to as a "lot-of-record" dwelling—under the pertinent provision of the county's code that implemented ORS 215.705(1).[3] Ultimately, on June 21, the county planning director, in what he described as a "[m]inisterial [d]ecision," approved the application subject to various conditions. Further, the decision stated, in pertinent part, that the lot-of record dwelling

> "approval will become invalid without special action if the conditions of approval have not been met within two (2) years from the date of the decision. An extension of up to twelve (12) months may be granted by the Director upon request of the applicant."[4]

Significantly, no notice of the application for the lot-of-record dwelling or the decision approving that dwelling was ever sent to the neighboring property owners.

On June 22—the day after the county issued the lot-of-record approval—the prior owners deeded the property to the Boweses. During the next two years, the Boweses did not attempt to satisfy the conditions of approval, because Philip Bowes was serving in the military and the Boweses were apparently away from Oregon.

On June 17, 1997—four days before the June 21 expiration of the 1995 approval—the county sent the Boweses a letter indicating that the approval would soon expire and that they could request a 12-month extension on the attached form by June 27. Ultimately, the Boweses submitted a request for an extension, which was dated June 24. The county extended the approval for a year.

---

[3] ORS 215.705(1) provides that "[a] governing body of a county or its designate may allow the establishment of a single-family dwelling on a lot or parcel located within a farm or forest zone" if, *inter alia*, "[t]he proposed dwelling is not prohibited by, and will comply with, the requirements of the acknowledged comprehensive plan and land use regulations and other provisions of law[,]" ORS 215.705(1)(c).

[4] *See* OAR 660-033-0140(1) (providing that certain discretionary decisions are "void two years from the date of the final decision if the development action is not initiated in that period"); OAR 660-033-0140(2) (providing that a county "may grant one extension period of up to 12 months" if certain conditions are satisfied—including the applicant's submission of a written request for an extension before the expiration of the approval period).

Similarly, each year thereafter from 1998 through 2010, the Boweses submitted a request for, and the county approved, a one-year extension.[5] In addition to the 1997 request, the 1998, 1999, 2000, and 2002 requests, were submitted after the annual June 21 expiration date. However, the Boweses timely requested an extension in 2010, which the county approved.

Also, by 2010, the Boweses had moved to Oregon and, at some point, began to make improvements within the access easements on some of the neighbors' properties. As LUBA explained,

> "[t]he parties dispute the content and timing of conversations between [the Boweses] and some of the [neighbors] regarding the purpose of the road improvements and whether [the Boweses] already possessed county approval for a lot-of-record dwelling. According to the affidavit of [neighbor] Katharine Jones (Jones), by September 2010 she had heard enough to inquire with the county planning department regarding existing approvals. According to her affidavit, a planning official spoke with Jones on September 28, 2010, and informed her that she could get copies of the documents in the file on [the Boweses'] lot-of-record dwelling approval. Jones states that on October 6, 2010, she went to the planning department and received a copy of the county's 1995 lot-of-record approval and of the subsequent annual decisions approving extensions of that approval."

Ultimately, on October 25, 2010—19 days after Jones obtained a copy of the 1995 approval and the corresponding annual extensions—the neighbors filed six separate appeals with LUBA, which LUBA consolidated by order. The first concerned the 1995 lot-of-record approval. Each of the remaining five appeals concerned a particular extension that was requested after the approval's annual June 21 expiration date—*viz.*, the 1997, 1998, 1999, 2000, and 2002 extensions.[6]

---

[5] *See* OAR 660-033-0140(4) (providing that "[a]dditional one-year extensions may be authorized where applicable criteria for the decision have not changed").

[6] As previously indicated, 247 Or App at 59 n 1, LUBA's ultimate resolution of the appeals concerning the five extensions is the subject of a separate judicial review proceeding. *Jones v. Douglas County (A148612)*, 247 Or App 81, 270 P3d 278 (2011). In our opinion in that case, we concluded that, "because the

Before LUBA, the neighbors raised myriad assignments of error. As pertinent to the issues in this review proceeding, the neighbors' primary contention was that the county erred in processing the 1995 application for a lot-of-record dwelling because the county failed to provide them with statutorily required notice.

In response, the Boweses raised several nuanced and intricate procedural and merits-based challenges—many of which were interrelated. For our purposes, a detailed recitation of the Boweses' challenges is unnecessary. However, in general terms and as pertinent to the issues raised in this review proceeding, the Boweses contended that LUBA lacked jurisdiction because (1) the 1995 approval is not a "land use decision"; (2) the neighbors failed to timely appeal under ORS 197.830; and (3) the appeal was moot.[7] Further, the Boweses contended that, because the appeal concerned a county decision that was more than 15 years old, LUBA was required to dismiss the appeal either under the equitable doctrine of laches or under ORS 12.140, a catch-all provision which provides that "[a]n action for any cause not otherwise provided for shall be commenced within 10 years."

LUBA rejected the Boweses' contentions concerning mootness, the doctrine of laches, and ORS 12.140. LUBA also rejected the Boweses' remaining interrelated contentions that the approval was not a land use decision and that the neighbors' appeal was untimely.

In so holding, LUBA addressed whether the 1995 lot-of-record approval was a land use decision subject to its

---

challenged extensions were granted under OAR 660-033-0140, they were not land use decisions subject to LUBA's jurisdiction" as provided in OAR 660-033-0140(3). *Id.* at 94. For that reason, we affirmed LUBA's dismissal of the appeals concerning the challenged extensions. *Id.* Accordingly, because this judicial review proceeding concerns only the 1995 approval, our discussion of the pertinent procedural history, as well as our analysis and ultimate disposition, concern only that approval.

[7] Specifically, the Boweses contended that the appeal was moot because either (1) the 2010 extension was a complete reauthorization of the 1995 approval and the neighbors had not appealed from and challenged that decision or (2) as of early 2011, they had satisfied all conditions specified in the 1995 approval such that any decision as to the correctness of the 1995 approval would have no practical effect on the parties.

jurisdiction. LUBA concluded that a lot-of-record approval requires a county to make discretionary determinations.[8] Because of its discretionary nature, the 1995 approval at issue here was not only a land use decision but was also a permit decision. For that reason, LUBA determined that the county had been statutorily required to provide notice to those persons entitled to notice—something the county had not done.[9]

That determination—*viz.*, that notice had been required but had not been given—necessarily framed LUBA's analysis concerning whether the appeal had been timely filed pursuant to ORS 197.830.[10] In analyzing that

---

[8] Specifically, LUBA explained that, "[w]hile some of the criteria in ORS 215.705(1) are straightforward and in isolation capable of ministerial application, others are not." To illustrate, LUBA noted that

"ORS 215.705(1)(c) requires a determination that the proposed dwelling is not prohibited by, and will comply with, the requirements of the acknowledged comprehensive plan and land use regulations and other provisions of law, which will almost always require the exercise of discretion in determining whether any comprehensive plan and land use regulations, or other laws, apply and if so whether the dwelling complies with them."

[9] In its order, LUBA noted that "there is no dispute that all [of the neighbors] currently reside within the notice area"; however, the parties did dispute which neighbors, if any, resided within the notice area at the time of the 1995 approval. For the limited purpose of resolving challenges to its jurisdiction, LUBA examined the affidavits and documents that the parties had submitted and determined that "there is no longer [a] dispute that * * * Ben Dawson * * * owned property adjacent to the subject property at the time the 1995 lot-of-record approval was issued * * *." Further, LUBA noted that the other neighbors acquired their property after 1995.

[10] At the time that LUBA made its decision, ORS 197.830 (2009) provided, in part:

"(3) If a local government makes a land use decision without providing a hearing, * * * a person adversely affected by the decision may appeal the decision to the board under this section:

"(a) Within 21 days of actual notice where notice is required; or

"(b) Within 21 days of the date a person knew or should have known of the decision where no notice is required.

"* * * * *

"(6)(a) Except as provided in paragraph (b) of this subsection, the appeal periods described in subsections (3), (4) and (5) of this section shall not exceed three years after the date of the decision.

"(b) If notice of a hearing or an administrative decision made pursuant to ORS 197.195 or 197.763 is required but has not been provided, the provisions of paragraph (a) of this subsection do not apply."

issue, LUBA noted that one of the neighbors, Dawson, owned adjoining property in 1995 and was entitled to notice, thus, "as to him[,] the appeal deadline [was] set by ORS 197.830(3)(a)." In other words, according to LUBA, because notice concerning the lot-of-record approval had been required but had not been given, Dawson could appeal the approval to LUBA within 21 days of obtaining "actual notice," *see* ORS 197.830(3)(a) (2009), even though the approval itself was approximately 15 years old, *see* ORS 197.830(6)(b) (2009).

For its part, LUBA had previously defined "actual notice" in *Frymark v. Tillamook County,* 45 Or LUBA 685 (2003). Adhering to its holding in *Frymark*, LUBA explained that

> " 'actual notice' of the decision where notice is required for purposes of ORS 197.830(3)(a) refers to (1) the legally required written notice of the decision, or (2) a copy of the decision itself, and that the 'actual notice' standard of ORS 197.830[3](a) is not satisfied by a petitioner's receipt of information from other sources, such as casual conversations with a neighbor."

(Internal quotation marks omitted.) Accordingly, LUBA concluded that the appeal of the 1995 lot-of-record approval had been timely filed because "Dawson did not receive written notice of the 1995 decision or a copy of the decision or equivalent information more than 21 days prior to the date the appeal was filed."[11]

Having rejected the Boweses' jurisdictional challenges, LUBA turned to the neighbors' contention that "the county erred in processing the 1995 application by failing to provide the notice and hearing required by ORS 215.416 * * *." As LUBA explained, its "jurisdictional analysis effectively resolve[d]" that contention. Ultimately, LUBA reasoned that the "lack of notice clearly prejudiced * * *

---

[11] LUBA did not resolve whether the appeal was timely as to the remaining neighbors, who, as noted, *see* 247 Or App at 63 n 9, did not acquire their properties until after 1995. Instead, LUBA reasoned that, even if the appeal was untimely as to those neighbors, "[t]he appeal itself would not be dismissed" because Dawson had timely appealed.

Dawson's substantial rights" and remanded the decision for the county to provide the statutorily required notice.

The Boweses seek judicial review of LUBA's resulting order, contending that LUBA erred in remanding the 1995 approval to the county. On review, the parties reiterate many of the same contentions raised before LUBA.

However, as the parties were in the process of completing their appellate briefs, the legislature enacted HB 3166, which amended ORS 197.830, the statute on which LUBA relied to determine that the appeal of the 1995 approval was timely. In sum, HB 3166 imposed a retroactive 10-year statute of ultimate repose on the appeal of certain land use decisions for which government was required to give notice but had failed to do so.[12]

When HB 3166 was introduced in the House Judiciary Committee, Representative Tim Freeman illustrated the need for a statute of repose concerning land use decisions for which notice was required but not given by explaining the Boweses' particular circumstances and the financial and evidentiary hardships that arise from defending an appeal that is taken many years after a decision is made. Audio Recording, House Committee on Judiciary, HB 3166, Mar 22, 2011, at 36.5 - 4:10.7 (statement of Rep Tim Freeman), http://www.leg.state.or.us/listn/ (accessed Dec 5, 2011). As Freeman summarized, HB 3166 provides that "10 years is it, the land use decision is final"—that is, the bill sets the point

---

[12] Although the parties have referred, at times, to the pertinent provision of HB 3166 as a "statute of limitations," the provision is more properly referred to as a "statute of repose" because it effectively sets a maximum period of 10 years after which certain land use decisions can no longer be challenged. As the Supreme Court explained in *Shasta View Irrigation Dist. v. Amoco Chemicals*, 329 Or 151, 162, 986 P2d 536 (1999), unlike statutes of limitation that limit the time that a party has to initiate an action once a claim has accrued,

"[s]tatutes of ultimate repose set maximum times to file a claim, regardless of the date of discovery of an injury or other circumstances that may affect the expiration of a statute of limitations. An ultimate repose period provides a deadline for the initiation of an action whether or not the injury has been discovered or has even occurred. Unless otherwise provided by statute, an ultimate repose period cannot be extended regardless of unfairness to the plaintiff. Once an ultimate repose period has expired, the claim is extinguished and no legally cognizable injury exists."

(Citations and internal quotation marks omitted.)

at which certain land use decisions can no longer be challenged. *Id.* at 4:08.0 - 4:29.5.

David Hunnicutt of Oregonians in Action also testified in support of the bill. According to Hunnicutt, the creation of such a repose period provides

> "a better balance between the legitimate rights of folks to file appeals in land use decisions and the rights of the property owner [or] any applicant[s] to be certain, at some point in time, that the approval that they received from the local government is final and can no longer be challenged."

*Id.* at 5:42.0 - 6:31.1 (statement of David Hunnicutt). Hunnicutt's position appeared to resonate with members of the judiciary committee, who discussed the possibility that, without the proposed repose period, challenges to decisions could be brought years after a dwelling had been constructed and occupied and the ownership of the property had changed. *Id.* at 13:08.0 - 13:50.2.

Edward Sullivan, a proponent of HB 3166—and the Boweses' attorney—also testified before the judiciary committees in both the House and Senate. He indicated that he not only had proposed the 10-year limit but that he also had proposed that the amendments "deal[ ] with cases that are still alive"—*i.e.*, this case. Audio Recording, Senate Committee on Judiciary, HB 3166, May 12, 2011, at 5:09.8 - 6:19.2 (statement of Edward Sullivan), http://www.leg.state.or.us/listn/ (accessed Dec 5, 2011); *see also* Audio Recording, House Committee on Judiciary, HB 3166, Mar 22, 2011, at 10:32.9 - 10:48.0 (statement of Edward Sullivan), http://www.leg.state.or.us/listn/ (accessed Dec 5, 2011).

Ultimately, the legislature amended ORS 197.830 consistently with Sullivan's proposals. As pertinent, ORS 197.830(6)(b) now provides that the 21-day appeal periods to LUBA described in subsections (3), (4), and (5), *"[m]ay not exceed 10 years after the date of the decision if notice of a hearing or an administrative decision* made pursuant to ORS 197.195 or 197.763 *is required but has not been provided."* Or Laws 2011, ch 483, § 1 (emphases added). Significantly, the legislature expressly provided that those amendments to subsection (6) "apply to a judicial or quasi-judicial review of

land use decisions or limited land use decisions that has not been reduced to a final judgment subject to no further appeal." Or Laws 2011, ch 483, § 2. The amendments in HB 3166 became effective during the pendency of this judicial review, on June 23, 2011. Or Laws 2011, ch 483, § 3.

Shortly thereafter, the Boweses moved to dismiss this judicial review proceeding. Specifically, they contend that HB 3166

> "provides a 10 year statute of limitations for land use decisions made without notice, making [the neighbors'] initial appeal untimely and, therefore, neither [LUBA] nor this court has jurisdiction over this case. Accordingly, LUBA's decision should be vacated and the County's grant of the Owner of Record dwelling permit should be found to be beyond appeal."

In response, the neighbors initially contend that the Boweses waived any defense of limitations predicated on HB 3166 by not raising the issue at their first opportunity. Further, the neighbors challenge the essential premise underlying the Boweses' motion—that is, that the legislature intended HB 3166 to apply retroactively to cases such as this one.

Alternatively, the neighbors assert that, to the extent that HB 3166 applies retroactively in this case, it violates the state and federal constitutions in a variety of ways. With regard to the Oregon Constitution, the neighbors contend that HB 3166 violates (1) the separation of powers principles in Article III, section 1, and Article VII (Amended), section 1, by intruding on the judicial function and obstructing the court's exercise of its judicial power to adjudicate this case; and (2) the remedy clause of Article I, section 10, because it "cut[s] off their rights immediately and without remedy." Similarly, with regard to the federal constitution, the neighbors contend that the retroactive application of HB 3166 "cuts off [their] due process rights without remedy, in violation of the [D]ue [P]rocess [C]lause of the Fourteenth Amendment."

Finally, the neighbors contend that, even if HB 3166 can be constitutionally applied to this proceeding, the consequence is that we lack jurisdiction to review LUBA's decision —and, because we lack jurisdiction, we cannot "vacate

LUBA's decision as [the Boweses] request." Thus, the neighbors reason, the practical (and, perhaps, ironic) result of a dismissal would be to leave in place LUBA's order remanding the 1995 approval to the county.

Before turning to the parties' specific contentions, we begin by addressing *our* jurisdiction—and, specifically, our jurisdiction regardless of whether HB 3166 is applicable and constitutional. We have previously emphasized that "our jurisdiction is not plenary. Rather, the sole source of appellate jurisdiction is statutory." *City of Lowell v. Wilson*, 197 Or App 291, 296, 105 P3d 856, *rev den*, 339 Or 406 (2005). As pertinent, ORS 197.850(3)(a) provides that "[j]urisdiction for judicial review of proceedings under ORS 197.830 to 197.845 is conferred upon the Court of Appeals." Consistently with ORS 197.850, the Boweses timely filed a petition for judicial review of LUBA's order in this case. Thus, we have jurisdiction to review LUBA's order and authority to reverse or remand the order if it is "unlawful in substance." ORS 197.850(9)(a).

Accordingly, we deny the Boweses' motion to dismiss for lack of jurisdiction. Our disposition of the motion, however, does not obviate the need to address the Boweses' principal contention that HB 3166 retroactively applies such that LUBA lacked jurisdiction to consider the neighbors' appeal. For the reasons that follow, we reject the neighbors' contrary contentions and agree with the Boweses that HB 3166 retroactively applies in this case such that the neighbors' appeal of the 1995 approval was untimely and LUBA lacked jurisdiction to consider it. *See Wicks-Snodgrass v. City of Reedsport*, 148 Or App 217, 939 P2d 625, *rev den*, 326 Or 59 (1997) (holding that the filing of an untimely notice of intent to appeal deprives LUBA of jurisdiction).

We turn first to the neighbors' subconstitutional challenges to HB 3166. *See Ainsworth v. SAIF*, 202 Or App 708, 711-13, 124 P3d 616 (2005), *rev den*, 341 Or 216 (2006) (explaining the principle that courts generally consider subconstitutional issues before reaching constitutional questions). In particular, the neighbors contend that the Boweses waived any limitations defense following the enactment of

HB 3166 and that the amendments in HB 3166 do not apply retroactively. We address each of those contentions in turn.

With regard to the issue of waiver, the neighbors contend that the Boweses were required to raise any issues concerning HB 3166 at the first opportunity. According to the neighbors, the "first opportunity" occurred on June 24—the day after HB 3166 became effective—when the Boweses filed their brief in the other judicial review proceeding concerning LUBA's order. Because the Boweses failed to raise any issue concerning HB 3166 in that brief, the neighbors posit that the Boweses waived "the defense of HB 3166 at that time."

However, the neighbors cite no applicable authority for that proposition.[13] In all events, here, the Boweses filed their motion to dismiss on July 27, before oral argument in this matter, and all parties have had a full and fair opportunity to address the applicability, constitutionality, and implication of HB 3166. Given those circumstances—and given that nothing in the record substantiates any intent on the Boweses' part to relinquish the ability to invoke HB 3166, which was manifestly designed to address their circumstances—we reject the neighbors' waiver contention without further discussion.

With regard to the issue of retroactivity, the neighbors contend that neither the text of the bill nor the legislative history indicates that the legislature intended HB 3166 to apply retroactively.[14] However, as we previously noted, 247 Or App at 66-67, section 2 of HB 3166 expressly provides that the newly created statute of repose in HB 3166 "appl[ies] to a judicial or quasi-judicial review of land use decisions or limited land use decisions that has not been reduced to a final

---

[13] The only authority that the neighbors cite in support of their contention that "[t]he defense of limitations is waived if not timely asserted" is *Creason v. Douglas County*, 86 Or 159, 164, 167 P 796 (1917), in which the Supreme Court noted that a statute of limitations defense is waived unless it is raised by demurrer or in an answer. That circumstance is inapposite here.

[14] *See Lovinger v. Lane County*, 206 Or App 557, 565, 138 P3d 51, *rev den*, 342 Or 254 (2006) ("Whether a statute applies prospectively or retroactively is a question of legislative intent, determined by applying the usual principles of statutory construction."); *see also State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining that, in discerning the legislature's intent, we consider a statute's text and context in light of any legislative history that appears useful to our analysis).

judgment subject to no further appeal." Or Laws 2011, ch 483, § 2. Thus, by its plain terms HB 3166 applies retroactively. Further, as recounted above, 247 Or App at 66, the legislative history patently demonstrates that section 2 was designed to ensure that the new repose period applied to the Boweses' case even though LUBA had already issued its order and judicial review was pending. Accordingly, we conclude that the text of section 2, as manifestly corroborated by the legislative history, demonstrates that the new 10-year statute of repose applies retroactively to appeals—such as this one—that LUBA had already adjudicated.

Accordingly, we turn to the neighbors' state and federal constitutional challenges to the retroactive application of HB 3166, beginning with their challenges under the state constitution. *See, e.g.*, *MacPherson v. DAS*, 340 Or 117, 125-26, 130 P3d 308 (2006) (noting that, generally, Oregon courts analyze state constitutional challenges before turning to any federal constitutional challenges). Specifically, the neighbors contend that HB 3166 violates separation of powers protections and the remedy clause of the Oregon Constitution. We address each of those contentions in turn.

First, the neighbors contend that HB 3166 violates separation of powers protections embodied in Article III, section 1, and Article VII (Amended), section 1, of the Oregon Constitution. Specifically, the neighbors contend that, by enacting the retroactive statute of repose in HB 3166, the legislature intruded on the judicial function and obstructed the court's exercise of its judicial power by "immediately cutting off the Court's right to review a pending case." For the reasons that follow, we disagree that HB 3166 violates separation of powers protections.

Article VII (Amended), section 1, provides, in part:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."

Article III, section 1, provides:

"The powers of the Government shall be divided into three seperate [sic] departments, the Legislative, the Executive, including the administrative, and the Judicial; and

no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

"Those provisions implicate two concerns: 'whether one department of government has "unduly burdened" the actions of another department'; and 'whether one department is performing the functions committed to another department.'" *Shelby v. Board of Parole*, 140 Or App 102, 108, 915 P2d 414, *rev den*, 324 Or 18 (1996) (quoting *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 28, 902 P2d 1143 (1995)); *see also MacPherson*, 340 Or at 134 (describing the same two concerns underlying separation of powers protections).

The neighbors contend that HB 3166 runs afoul of both concerns. In resolving that contention, two cases— *A.K.H. v. R.C.T.*, 312 Or 497, 822 P2d 135 (1991), and *Phariss v. Welshans*, 150 Or App 498, 946 P2d 1160 (1997), *abrogated on other grounds by J. B. D. v. Plan Loving Adoptions Now, Inc.*, 218 Or App 75, 178 P3d 266, *rev den*, 344 Or 670 (2008)—are especially instructive.

In *A.K.H.*, the defendant contended that an amendment to a limitation period that applied retroactively to revive actions that were previously barred violated separation of powers protections. 312 Or at 499-501. The Supreme Court disagreed, explaining that "[i]t is a function of legislation to draw lines. We do not see how legislative awareness of the facts of a *particular* case that would fall within the terms of its enactment of a general law in any way changes the purely legislative nature of the enactment."[15] *Id.* at 502 (emphasis in original).

Relatedly, in *Phariss*, we held that a statute that prohibited challenges to an adoption judgment more than one year after the judgment had been entered did not violate separation of powers protections. 150 Or App at 503. Specifically, we reasoned that, "[i]n enacting the statute, the legislature ha[d] not participated in the adjudication of this or any

---

[15] The court noted that the legislative history indicated that "the legislature specifically was made aware of the present case as an illustration of the kind of case to which supporters of the * * * measure wished to have it apply." *A.K.H.*, 312 Or at 500 n 4.

other case" but, instead, had "merely limited the time period for the challenging of a judgment," which "is a proper exercise of the authority of the legislature." *Id.* at 502-03.

Here, in enacting HB 3166, the legislature simply established a repose period after which certain land use decisions cannot be challenged. As in *A.K.H.* and *Phariss*, that is a proper exercise of legislative authority. Moreover, the fact that we are unable to adjudicate the merits of the neighbors' dispute does not implicate separation of powers principles. Certainly, by enacting HB 3166, the legislature has changed the law that underlies our review. Nonetheless, we are free to exercise our constitutional adjudicative role and apply HB 3166 as appropriate under the circumstances. Accordingly, we conclude that HB 3166 does not violate the separation of powers provisions of the Oregon Constitution.

Second, the neighbors contend that HB 3166 violates the remedy clause of Article I, section 10, which provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." According to the neighbors, HB 3166 violates Article I, section 10, by "cut[ting] off their rights immediately and without remedy."

Under the analytical construct established by the Supreme Court in *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001), the dispositive issue is whether the neighbors have "alleged an injury to one of the absolute rights that Article I, section 10 protects." In resolving that issue, we must determine whether, "when the drafters wrote the Oregon Constitution in 1857, * * * the common law of Oregon recognize[d] a cause of action for the alleged injury[.]" *Id.*; *see also Christiansen v. Providence Health System*, 210 Or App 290, 297, 150 P3d 50 (2006), *aff'd on other grounds*, 344 Or 445, 184 P3d 1121 (2008) (stating that, in applying *Smothers*'s analytical construct, the initial question is whether the claim "was recognized by the common law of Oregon, or any other jurisdiction, around the time the Oregon Constitution was adopted").

In this case, the neighbors contend that they were denied their right to notice of the local government's approval of a lot-of-record dwelling on neighboring property. However, the neighbors have not identified a source of the purported

right, or a common-law cause of action, that existed as of the time that the Oregon Constitution was adopted that would have enabled them to vindicate such a right. Nor do we perceive that such an action then existed at common law.[16] Accordingly, we reject the neighbors' remedy clause challenge and turn to their federal constitutional challenge.

In that regard, the neighbors reiterate that their right to notice concerning the 1995 approval is "guaranteed by the [D]ue [P]rocess [C]lause of the Fourteenth Amendment to the United States Constitution," which provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" However, HB 3166 does not deprive the neighbors or any person of the right to notice. ORS 215.416, which, as LUBA determined, requires notice in certain permit proceedings, remains in effect. Instead, HB 3166 deprives the neighbors and others of the right to challenge such a land use decision for lack of notice more than 10 years after the date of the decision. The neighbors' objection to that limitation is a substantive due process objection. *See Powell v. DLCD*, 238 Or App 678, 682, 243 P3d 798 (2010) (explaining that "[a]n argument grounded in substantive due process * * * asserts that the state's objective is simply beyond its power to achieve, regardless of how many procedural safeguards it might provide"). As we understand it, the essence of the neighbors' challenge is that the retroactive application of HB 3166 deprives them of a right to a remedy after LUBA had already adjudicated their appeal and judicial review of LUBA's order was pending in this court—that is, the retroactive application of HB 3166 deprives the neighbors of the right to complete an ongoing judicial proceeding.[17]

---

[16] *Cf. Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 222-23, 264 P3d 1265 (2011) ("Comprehensive zoning laws first emerged in the early part of the twentieth century. Before then, local governments regulated the location of certain nuisance uses but did not control the use of land within their jurisdictions on a comprehensive basis. As a result of increasing urbanization, local governments sought to organize more effectively the variety of different and, at times, incompatible uses of land within their communities. To that end, state legislatures began enacting enabling legislation that authorized local governments to pass comprehensive zoning ordinances. *See, e.g.*, Or Laws 1919, ch 311 (permitting municipalities to enact comprehensive zoning ordinances)." (Some citations omitted.)).

[17] The neighbors also raise a facial challenge to HB 3166. Specifically, they contend that

"HB 3166 is unconstitutional on its face because it states that, if local government makes a decision where notice is constitutionally required but fails to

In our recent decision in *Powell* we described the principles that guide our analysis of the neighbors' substantive due process challenge. Further and significantly, in *Powell* and in *Ileto v. Glock, Inc.*, 565 F3d 1126 (9th Cir 2009), *cert den*, ___ US ___ , 130 S Ct 3320 (2010), we and the Ninth Circuit applied those principles under circumstances in which legislation retroactively extinguished pending claims, which is analogous to the effect of the retroactive repose period in HB 3166. *See Shasta View Irrigation Dist. v. Amoco Chemicals*, 329 Or 151, 162, 986 P2d 536 (1999) ("Once an ultimate repose period has expired, the claim is extinguished and no legally cognizable injury exists."). For that reason, we discuss those cases in some detail.

We begin with *Powell*, which presented "another episode in the long series of disputes generated by Ballot Measure 49 [(2007)], the referendum that modified [Ballot] Measure 37 [(2004)] and altered the government's obligations with respect to reductions in property value caused by regulation."[18] 238 Or App at 680. The plaintiff in *Powell* "initially filed a claim under Measure 37 before the enactment of Measure 49, only to have that pending claim extinguished in the circuit court after Measure 49 went into effect." *Id.*

On appeal, the plaintiff contended that the retroactive application of Measure 49 deprived her "of a 'vested right in her Measure 37 litigation' " in violation of the federal due

---

give such notice, there is no remedy if a party fails to find out about the decision within ten years (*i.e.*, where the party has neither actual nor constructive notice)."

We reject that contention without extended discussion, noting only that the neighbors' reasoning would completely preclude the legislature's authority to enact statutes of repose, which, by their nature, are purposely designed to "provide[ ] a deadline for the initiation of an action whether or not the injury has been discovered or has even occurred." *Shasta View Irrigation Dist.*, 329 Or at 162 (internal quotation marks omitted).

[18] As context, Measure 37 (2004), which was enacted through the initiative process provided, generally, that public entities that enacted or enforced land use regulations that adversely affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. In 2007, the voters passed Measure 49, which "extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners." *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008).

process clause. *Id.* at 682. Her argument was predicated primarily on case law decided during the *"Lochner* era" of United States Supreme Court jurisprudence. *Id.* at 682-85.

We began our analysis by placing that case law in "historical perspective." Specifically, we explained:

"Although [the cases on which the plaintiff relied have not] been overruled, the jurisprudential foundation on which they rest has been repeatedly and emphatically repudiated. [Those] cases date from the much-maligned *'Lochner* era' of Supreme Court jurisprudence, during which the Court exercised stringent review of economic regulation and struck down a number of statutes that it considered unwise or unnecessary burdens on economic life. In *Lochner* itself, the Court held that a New York statute limiting the number of hours that bakers could work to 60 per week was an unconstitutional imposition on the economic liberty guaranteed by the Due Process Clause. *Lochner v. New York,* 198 US 45, 52-53, 25 S Ct 539, 49 L Ed 937 (1905). Like [the cases on which the plaintiff relied], *Lochner* has never been overruled. Nonetheless, it is—at least for now—dead. 'The day is gone when [the Supreme Court] uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.' *Williamson v. Lee Optical of Oklahoma,* 348 US 483, 488, 75 S Ct 461, 99 L Ed 563 (1955); *Planned Parenthood v. Casey,* 505 US 833, 861, 112 S Ct 2791, 120 L Ed 2d 674 (1992) (*'West Coast Hotel Co. v. Parrish,* 300 US 379, [57 S Ct 578, 81 L Ed 703 (1937)], signaled the demise of *Lochner* * * *.')."

*Powell,* 238 Or App at 685 (footnote omitted; fourth and fifth brackets and omission in *Powell*).

We further explained that, following the *Lochner* era, the Court's substantive due process analysis in the context of economic regulation had been framed in terms of "rationality":

"Beginning with *West Coast Hotel Co.,* and for the past three-quarters of a century, the Court's substantive due process analysis in the area of economic legislation has been framed in terms of rationality rather than in terms of

'vested rights.' Indeed, by the mid-1970s, it was 'well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.' *Usery v. Turner Elkhorn Mining Co.*, 428 US 1, 15, 96 S Ct 2882, 49 L Ed 2d 752 (1976). That same standard has been applied to retroactive economic legislation:

" 'Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches[.] * * *

" 'To be sure, * * * retroactive legislation does have to meet a burden not faced by legislation that has only future effects. * * * "The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." * * * But *that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.'*

*"Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 US 717, 729-30, 104 S Ct 2709, 81 L Ed 2d 601 (1984) (quoting *Usery*, 428 US at 16-17) (emphasis added). In *General Motors Corp. v. Romein*, 503 US 181, 191, 112 S Ct 1105, 117 L Ed 2d 328 (1992), the Court stated:

" 'Retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions. For this reason, "[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process": a legitimate legislative purpose furthered by rational means.'

"(Quoting *Pension Benefit Guaranty Corp.*, 467 US at 730 (alterations in *Romein*).)"

*Powell*, 238 Or App at 685-86 (first brackets and omissions in *Powell*).

Nevertheless—relying on *Hall v. Northwest Outward Bound School*, 280 Or 655, 572 P2d 1007 (1977)—the plaintiff in *Powell* contended that, regardless of the United States Supreme Court's adherence to rationality review in the context of substantive due process challenges to economic regulation, the Oregon Supreme Court "has signaled adherence to the older substantive due process jurisprudence." *Powell*, 238 Or App at 686. In particular, the plaintiff focused on "the court's passing observation" in *Hall* that " '[r]etroactive application of a change in the law may be invalid for depriving a litigant of due process in the literal sense of an opportunity to adjudicate an existing claim, for instance by shortening the terms of a statute of limitations.' " *Powell*, 238 Or App at 687 (quoting *Hall*, 280 Or at 661-62) (brackets in *Powell*).

We rejected the plaintiff's contention for three reasons:

"First, it is *dictum*. Second, it expresses a mere possibility: retroactive application *'may be'* invalid. And most significantly, even if it were a solid holding, it does not apply to the facts in this case. In the hypothetical situation in the *Hall dictum*, the hypothetically unconstitutional statute deprives a litigant of an opportunity to litigate an existing claim, without negating the existence of the claim. Measure 49, in contrast, deprives plaintiff of the claim itself."

*Powell*, 238 Or App at 687 (emphasis in original).

Ultimately, we declined the plaintiff's "invitation to rouse the 'ghost of *Lochner*' through a 'vested rights' analysis of economic regulation." *Id.* at 687 (footnote omitted). Instead, applying the more modern substantive due process analysis grounded in concepts of rationality, we concluded that Measure 49 and its retroactive application were "a rational response to the legitimate governmental concerns posed by Measure 37." *Id.* at 689. Accordingly, we concluded that the retroactive application of Measure 49 did not violate substantive due process principles. *Id.* at 690.

Similarly, in *Ileto*, the Ninth Circuit concluded that Congress's enactment of legislation that required the immediate dismissal of pending litigation did not run afoul of substantive due process principles. 565 F3d at 1140-41. In *Ileto*,

the plaintiffs, several shooting victims and the spouse of one victim who had died, sued defendants, who were manufacturers, marketers, importers, distributors, and sellers of firearms, raising a variety of claims. *Id.* at 1130. In 2005, while the case was pending, Congress enacted the Protection of Lawful Commerce in Arms Act (PLCAA or the Act), 15 USC §§ 7901 - 03. *Id.* at 1131.

"The PLCAA generally preempt[ed] claims against manufacturers and sellers of firearms and ammunition resulting from the criminal use of those products." *Id.* Further, "[t]he PLCAA affect[ed] future and pending lawsuits, and courts [were] required to 'immediately dismiss[ ]' any pending lawsuits preempted by the PLCAA. 15 U.S.C. § 7902(b)." *Id.* (fourth brackets in *Ileto*). The plaintiffs contended that the PLCAA violated "substantive due process principles because the Act [was] an unconstitutional exercise of congressional power that cannot withstand rational basis review." *Id.* at 1140.

Noting that "congressional speakers referred to *this very case* as the type of case they meant the PLCAA to preempt," *id.* at 1137 (emphasis in original), the Ninth Circuit concluded that "there [was] nothing irrational or arbitrary about Congress' choice here[,]" *id.* at 1140. Specifically, the Ninth Circuit reasoned:

"We have no trouble concluding that Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected. And 'it was eminently rational for Congress to conclude that the purposes of the [PLCAA] could be more fully effectuated if its . . . provisions were applied retroactively.' [*Pension Benefit Guaranty Corp.*], 467 US at 730[.]"[19]

---

[19] The plaintiffs in *Ileto* also contended "that greater scrutiny is required because they have a vested property right in their accrued state-law causes of action." 565 F3d at 1141. The Ninth Circuit rejected the plaintiffs' contention, reasoning that the premise underlying that contention was incorrect because a property right in a cause of action "does not vest until a final unreviewable judgment is obtained." *Id.* (internal quotation marks omitted).

*Ileto*, 565 F3d at 1140-41 (first brackets and omission in *Ileto*).

Here, consistently with *Powell* and *Ileto*, we apply the more modern substantive due process principles in analyzing the neighbors' challenge to HB 3166. As amplified below, we conclude that HB 3166 and its retroactive application reflect "a legitimate legislative purpose furthered by rational means." *General Motors Corp.*, 503 US at 191.

ORS 197.010 provides, in part, that the "[e]quitabl[e] allocat[ion of] the benefits and burdens of land use planning," ORS 197.010(2)(a)(D), is an overarching principle that guides "[t]he Legislative Assembly when enacting a law regulating land use[,]" ORS 197.010(2)(c)(A). As the history demonstrates, 247 Or App at 65-66, the legislature enacted the repose period in HB 3166 to effectuate a more equitable balance between the rights of individuals who were entitled to notice of certain land use decisions but had not received such notice and the rights of landowners who had received an approval from a local government. The legislature achieved that balance by creating a 10-year repose period that would give those potentially affected by the decisions a substantial period of time within which to discover them, after which a landowner could conclusively rely on the approval. The neighbors cannot credibly challenge the legitimate governmental purpose in balancing those rights or argue that a 10-year repose period was not a rational means to effect that balance.

Further, it was rational for the legislature to achieve that balance retroactively. The Boweses' circumstances alerted the legislature to the fact that some land use approvals could be challenged decades after their issuance and to the potential that similar challenges could be brought under circumstances in which a landowner had already built and occupied a residential or commercial structure. Such challenges could have significant financial repercussions for individual landowners, as well as the state as a whole. Having been alerted to those issues, the legislature's retroactive application of the repose period to the appeals of certain land use approvals—regardless of when an approval had been

issued or whether a challenge to an approval was pending—was a rational response to a legitimate governmental concern. Accordingly, we conclude that the retroactive application of the statute of repose in HB 3166 does not offend substantive due process principles as embodied in the Due Process Clause to the Fourteenth Amendment.

In sum, we have rejected the neighbors' state and federal constitutional challenges to the retroactive application of the statute of repose in HB 3166. Accordingly, that repose period applies in this case. Here, there is no dispute that the neighbors took an appeal of the 1995 approval to LUBA in 2010—approximately five years after the 10-year repose period had run. Thus, because the appeal was not timely, LUBA lacked jurisdiction to consider the appeal of that decision and its order remanding the approval to the county was unlawful in substance. ORS 197.850(9)(a). Accordingly, we remand LUBA's order with instructions to vacate the portions of the order that concern the 1995 decision—that is, LUBA Case Number 2010-098—and dismiss the appeal of that decision. Our disposition in that regard obviates the need to address the merits of the other issues addressed by LUBA and raised on review.

Motion to dismiss denied. Remanded to LUBA with instructions to vacate portions of its order concerning LUBA Case Number 2010-098 and to dismiss that appeal.